690 So.2d 232 (1997)
STATE of Louisiana ex rel. PLAQUEMINES PARISH SCHOOL BOARD
v.
PLAQUEMINES PARISH GOVERNMENT.
No. 96-CA-0936.
Court of Appeal of Louisiana, Fourth Circuit.
February 26, 1997.
*233 Mack E. Barham, Robert E. Arceneaux, Barham & Arceneaux, New Orleans, for Plaintiff/Appellant Plaquemines Parish School Board.
Stephen C. Braud, L. V. Cooley, IV, Belle Chasse, for Defendant/Appellant Plaquemines Parish Government.
Before BYRNES, ARMSTRONG and JONES, JJ.
ARMSTRONG, Judge.
This is a land title dispute case. What is ultimately at issue is the oil and gas revenues from certain lands located in Plaquemines Parish. The Plaquemines Parish Government has possession of the lands. The Plaquemines Parish School Board alleges that the lands are subject to a trust for schools in favor of the School Board. More particularly, the School Board alleges that the land consists of certain Sixteenth Sections that were reserved by federal law for the benefit of schools at the time that various lands were transferred from the United States to Louisiana.[1] The Parish Government contends that the lands at issue are "sovereignty lands" (i.e. lands which were either water bottoms underlying navigable waters or lands affected by the ebb and flow of the tides when Louisiana was admitted to the Union as a state in 1812) which Louisiana acquired directly as a result of its admission as a state of the United States rather than as a result of transfer from the United States, so the lands are not subject to the school trust. The School Board replies that the school trust applies even to sovereignty lands.
The trial court found that eight of the thirteen Sixteenth Sections at issue are not sovereignty lands, and so are subject to the school trust, and that the other five Sixteenth Sections at issue are sovereignty lands and so are not subject to the school trust. Because we find that the legal issue of whether sovereignty lands are subject to the school trust has been decided in favor of the Parish Government in a previous appeal in this same case, and because we find that the trial court was not clearly wrong or manifestly erroneous in its determination of whether each of the Sixteenth Sections at issue was or was not navigable waterbottom or subject to the ebb and flow of the tide in 1812 (i.e. whether each is sovereignty land or not), we affirm the judgment below.

Procedural History and Prior Decisions in This Case
The trial court originally rendered a December 26, 1990 judgment in which it granted summary judgment in favor of the School Board. In its December 26, 1990 Reasons for Judgment, the trial court held that it was of no consequence whether the lands at issue are sovereignty lands because sovereignty lands, as well as other lands, are subject to the school trust.
On May 20, 1991, the trial court, through a new judge assigned to the case, granted a rehearing and vacated the December 26, 1990 summary judgment. In its May 20, 1991 Reasons for Judgment, the trial court, among other things, expressed concern as to whether sovereignty lands are subject to the school trust.
*234 This Court considered the trial court's vacating of the summary judgment on a writ application brought by the School Board in State, Plaquemines Parish School Board v. Plaquemines Parish Government, 593 So.2d 958 (La.App. 4th Cir.), writ denied, 600 So.2d 638 (La.1992), 605 So.2d 1085 (La.1992) (hereinafter Plaquemines I). We held that sovereignty lands are not subject to the school trust:
In Terrebonne Parish School Board v. Texaco, Inc., 178 So.2d 428 (La.App. 1st Cir.1965), writ denied 248 La. 465, 179 So.2d 640, cert den. 384 U.S. 950, 86 S.Ct. 1568, 16 L.Ed.2d 546, the court provided an interesting historical review of the reservation of sixteenth sections for school purposes. After finding that the sixteenth section involved was a navigable waterbottom the court concluded that title passed to the State of Louisiana. Relator argues that the case does not support respondent's position and that the case held only that the school trust did not attach to sixteenth sections until they were surveyed. As we read the case the court held that in the case where there is some high land within a sixteenth section which otherwise consists of navigable waterbottoms a survey would be necessary before any claims for indemnity land for this section could be allowed. But, the claim would extend only to the high land portion, not to the waterbottoms.
While relator makes excellent arguments to avoid the holding of the Terrebonne Parish School Board case regarding waterbottoms in the sixteenth sections it clearly recognizes that the case is adverse to its position and would have this court decline to follow it. Relator also argues that Coastal States Gas Producing Company v. State Mineral Board, 199 So.2d 554 (La.App. 3rd Cir.1967), does not support respondent's position. This argument flies in the face of the following statement from the case which was written by the late, Judge Tate:
....therefore, the water beds owned by the state by virtue of its inherent sovereignty are not included within the conveyed property described as "schoollands", at least in the absence of strong indicia to the contrary. State v. Bayou Johnson Oyster Co., 130 La. 604, 58 So. 405, 409-0410 (1912) (excluding water beds from the sale of "swamp and overflowed land"). The navigable water bottoms within a school land section are not included within school lands granted to the State. See Terrebonne Parish School Board v. Texaco, Inc., La.App. 1 Cir., 178 So.2d 428, certiorari denied 248 La. 465, 179 So.2d 640.
In conclusion, we join the first and third circuits in holding that navigable waterbottoms in sixteenth sections are not dedicated for school purposes.
593 So.2d at 960.
The Supreme Court, in denying writs from that decision of this Court, stated that: "Relator [the School Board] may re-raise the issue on appeal after judgment on the merits". 600 So.2d 638.
On remand, the trial court, in an August 16, 1993 judgment, held, among other things, that all of the Sixteenth Sections at issue are subject to the school trust. In its August 16, 1993 Reasons for Judgment, the trial court reasoned that even sovereignty lands are subject to the school trust. The Parish Government appealed that decision to this Court.
This Court, in opinions on original hearing and on partial rehearing, again held that sovereignty lands are not subject to the school trust. State, ex rel. Plaquemines Parish School Board v. Plaquemines Parish Government, No. 93-CA-2339 (La.App. 4th Cir. 12/15/94 and 4/7/95), 652 So.2d 1, writ denied, (La.6/23/95), 656 So.2d 1015 (hereinafter Plaquemines II). Specifically, on original hearing, we held:
Those lands that were not beds of navigable waters on April 30, 1812 and were surveyed as 16th Section lands are subject to the school trust. The Plaquemines Parish School Board is entitled to all revenue from these lands from the date suit was filed.
Those lands that were beds of navigable waters on April 30, 1812 form no part of the 16th Section in which they are located (or would be located if the 16th Section was a surveyed whole Section), and are *235 sovereignty lands not impressed with the school trust.
Those lands that were beds of navigable waters on April 30, 1812 that are now land areas and are no longer lands under navigable bodies of water are still sovereignty lands and are not impressed with the school trust.
The case is remanded to the trial court for further proceedings consistent with this opinion.
652 So.2d at 6. On partial rehearing, we held:
We grant partial rehearing in this matter to consider for the first time the status of those lands that are subject to the ebb and flow of the tides as well as those lands that form the bottoms of unnavigable rivers and streams. Accordingly, we amend our opinion to provide the following supplement.
Those lands, whether surveyed or unsurveyed, that were subject to the ebb and flow of the tides of the Gulf of Mexico on [April 12, 1812], belong to the State by virtue of its sovereignty and are not subject to the school trust. Those lands that form the bottoms of unnavigable rivers and streams, but are not tidelands, are subject to the school trust.
652 So.2d at 6-7. Thus, our holding was that both waterbottoms under navigable waters in 1812, and lands subject to the ebb and flow of the tide in 1812, were sovereignty lands and are not subject to the school trust. We remanded to the trial court for a determination of which, if any, of the Sixteenth Sections at issue were navigable waterbottoms or were subject to the ebb and flow of the tide in 1812i.e. which, if any, are sovereignty lands.
On remand, the trial court rendered a January 29, 1996 judgment in which it found that eight of the thirteen Sixteenth Sections at issue are subject to the school trust and that five of the thirteen Sixteenth Sections at issue are not subject to the school trust. The trial court, in its January 29, 1996 Reasons for Judgment, in making its determination of which Sixteenth Sections were sovereignty lands and which were not, relied primarily upon previous decisions of the U.S. Department of the Interior as recorded in a U.S. tract book.

The Issues Raised By The Parties
The Parish Government argues that the trial court erred in finding that eight of the Sixteenth Sections were not sovereignty lands. The Parish Government argues that the trial court erroneously held that the prior decisions of the U.S. Department of the Interior as to those Sixteenth Sections are conclusive and that, instead, the trial court should have relied upon the testimony of the Parish Government's two expert witnesses and the maps and other documents used by those experts.
The U.S. Department of Interior decisions at issue were made pursuant to the Swamp Lands Grants Act by which the federal government transferred certain lands to Louisiana. Under that statute, Louisiana selected certain lands as lands to be transferred. Eight of the thirteen Sixteenth Sections at issue were included in the lands selected by Louisiana but the selection was rejected by the U.S. Department of the Interior on the grounds that the selected lands were Sixteenth Sections "reserved by law for schools". In contrast, as to four of the five other Sixteenth Section lands at issue, the selection by Louisiana was rejected by the U.S. Department of Interior on the ground that they were subject to the ebb and flow of the tide and were thus sovereignty lands. Thus, there can be no doubt that the U.S. Department of the Interior was making determinations of whether selected lands were sovereignty lands and that the rejection of the selection of eight of the Sixteenth Sections on the ground that they were "reserved by law for schools" indicates a determination that those eight Sixteenth Sections were not sovereignty lands.
The Parish Government complains that the trial court treated as conclusive the U.S. Department of Interior decisions as to the eight sections found not to be sovereignty lands. It is correct that the trial court, at one point in its Reasons for Judgment, gave the U.S. Department of the Interior decisions conclusive effect. However, in an alternative basis for its decision, also set out in its *236 Reasons For Judgment, the trial court did not give the U.S. Department of the Interior decisions conclusive effect, and instead treated them as evidence which could be rebutted by the Parish Government. Ultimately, the trial court concluded that the evidence presented by the Parish Government, consisting of testimony of two expert witnesses and various maps and documents used by them, was outweighed by the decisions of the U.S. Department of the Interior. Thus, the trial court made a finding of fact that eight of the Sixteenth Sections were not sovereignty lands.
Certainly, it was proper for the trial court to receive into evidence the U.S. tract book with the decisions as to the Sixteenth Sections. La.Code Evid. art. 803(8) (public records and reports). Also, the trial court's finding of fact as to whether the eight Sixteenth Sections were sovereignty lands is reviewed on appeal under the clearly wrong/manifest error standard of appellate review. Ambrose v. New Orleans Police Department Ambulance Service, No. 93-C-3099 (La.1994), 639 So.2d 216; Stobart v. State, DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). One of the Parish Government's expert witnesses, Ms. Joy Eaton, was recognized by the trial court as an expert abstractor but not as an expert in engineering or surveying. In other words, her only expertise was in locating the available maps and other documents relevant to the issues. The Parish Government's other expert witness, Dr. Sherwood Galliano, an expert in the field of geomorphology, attempted to reconstruct which lands at issue were covered by navigable waters in 1812. However, Dr. Galliano's testimony was not unequivocal and included some approximations and extrapolations necessitated by the limited information available. Thus, we cannot say that the trial court was clearly wrong or manifestly erroneous in deciding to give more weight to the U.S. Department of Interior decisions than to the Parish Government's expert witnesses. Such weighing of the contradictory evidence is primarily the province of the trial court. In view of the trial court's finding of fact that the eight Sixteenth Sections are not sovereignty lands, we need not address the issue of whether the U.S. Department of Interior's decisions are conclusive.
As to the five Sixteenth Sections that the trial court found to be sovereignty lands, and thus not subject to the school trust, the School Board complains that, even though those lands are sovereignty lands, they are nevertheless subject to the school trust. The School Board argues that sovereignty lands, as other lands, can be subject to the school trust. However, this very issue was squarely decided by this Court, adversely to the School Board, in the previous appeal in Plaquemines II. The relevant language of our Plaquemines II decision is quoted above.
Thus, under the law of the case doctrine, we will not revisit the issue of whether sovereignty lands can be subject to the school trust and, instead, we will adhere to the Plaquemines II decision that they cannot be so subject. Day v. Campbell-Grosjean Roofing and Sheet Metal Corp., 260 La. 325, 256 So.2d 105, 107 (1971). While we have some discretion to not apply the law of the case doctrine, in order to avoid "manifest injustice" or because of "palpable error" in our prior decision, id., no such manifest injustice or palpable error appears in this case. In fact, we find the Plaquemines II decision highly persuasive, at least in the absence of a Supreme Court decision on point, and we adopt its reasoning (particularly the concurrence on rehearing) as our own, regardless of its law of the case effect.
The School Board points out that, in denying the School Board's application for writs following our Plaquemines I decision, the Supreme Court stated that the School Board "may re-raise the issues on appeal after judgment on the merits". 600 So.2d 638. That language would, at most, mean that our decision in Plaquemines I would not be the law of the case. But, there was a later (August 16, 1993) "judgment on the merits" by the trial court on remand and an appeal which resulted in our Plaquemines II decision. Thus, the law of the case effect of the Plaquemines II decision is not affected by the language of the Supreme Court's denial of writs as to our Plaquemines I decision. We note that the Supreme Court's *237 denial of writs as to our Plaquemines II decision was without any qualification or limitation.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Pursuant to federal law, federal public lands were to be surveyed and demarcated into "townships" which were, in turn, subdivided into 36 numbered "sections". The 16th section of each township was reserved for the benefit of schools. Proceeds from the sale, lease, etc. of the 16th section was to benefit schools.