891 So.2d 36 (2004)
HUNT PETROLEUM CORPORATION and Rosewood Resources, Inc.
v.
TEXACO, INC., Shell Western E & P, Inc., Exxon Corporation, Chevron U.S.A., Inc., Albert Alkek, Black Chapell Limited Partnership, Japex (U.S.) Corp., Wacker Oil, Inc., Evelyn Rae Harris Russell, Frank S. Pons, Robert W. Swords, et al.
No. 2004-CA-0729.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 2004.
*37 Robert E. Arceneaux, Metairie, LA, for Plaquemines Parish School Board.
Charles C. Foti, Jr., Attorney General, E. Kay Kirkpatrick, Assistant Attorney General, Issac Jackson, Jr., Assistant Attorney General, Louisiana Department of Justice, Baton Rouge, LA, and Patrick S. Ottinger, Special Assistant Attorney General, Lafayette, LA, for Defendants/Appellants Texaco, Inc., et al.
(Court composed of Judge CHARLES R. JONES, Judge TERRI F. LOVE, Judge DAVID S. GORBATY).
*38 DAVID S. GORBATY, Judge.
In this appeal, the State of Louisiana ("State") avers that the trial court erred in granting the Motion for Summary Judgment filed by Plaquemines Parish School Board ("School Board"). For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL HISTORY
Hunt Petroleum Corporation and Rosewood Resources, Inc. (collectively "Hunt Petroleum") filed the instant concursus proceedings to deposit funds in the registry of the court accruing from various oil, gas, and mineral leases in Plaquemines Parish. Hunt Petroleum called upon the named defendants to prove their ownership of the funds at issue, and after due proceedings, that the deposited funds be disbursed.
Two of the leases in question cover parts of what is alleged to be Section 16, Township 21 South, Range 27 East in Plaquemines Parish. The petition named the Plaquemines Parish Government or the State of Louisiana as "owner" of that Sixteenth Section. The School Board was not named as a defendant in the principal action.
In May 1997, the School Board filed an intervention in this matter in which it alleged that the ownership of the subject lands had already been litigated and that consequently, it is the owner of the subject lands. The School Board's claim was based on the assertion that the subject lands constitute a Sixteenth Section of land set aside and encumbered by a trust for the benefit of public schools.
The School Board then filed a Motion for Summary Judgment, alleging that as there was no genuine issue of material fact, they were entitled to judgment as a matter of law, and requested that the trial court "render judgment in its favor awarding to it all funds attributable to the mineral production from the Sixteenth Section of Township 21 South, Range 27 East, Plaquemines Parish, Louisiana ..." After a hearing, the trial court granted the Motion for Summary Judgment. The State subsequently filed this appeal.

DISCUSSION
The State asserts the following assignments of error:
1. The trial court erred in its grant of the School Board's Motion despite the School Board's failure to provide its List of Material Facts Not Genuinely Disputed, as required by Rule 9.10(2)(b) of the Rules for Louisiana District Courts. The failure of a movant to comply with this requirement places the opponent at a disadvantage. As such, the motion should have been denied, the State avers.
A trial court has discretion to dispense with the strict application of local rules when unnecessary to the resolution of a dispute. Favaloro v. Favaloro, 561 So.2d 783, 787 (La.App. 4 Cir.1990). Where documents submitted in support of a motion for summary judgment are sufficient, the court is warranted in waiving the local rule requiring a statement of uncontested facts. Id. Here, the issues raised by the motion for summary judgment were entirely legal: whether the State's claim was barred by res judicata, and whether the State could collaterally attack the Department of Interior's prior determination of the character of the lands at issue. A statement of uncontested facts was unnecessary, because the motion asked for relief, regardless of any facts except those already appearing of public record. The trial court was within its discretion in finding that a statement of facts was not necessary.
2. The trial court erred in considering the audit report attached to the School Board's Motion to Supplement *39 Pending Motion for Summary Judgment in reaching its decision to render the judgment. The audit report of the trial court's appointed expert Joseph Quillo[1] was not verified or sworn to by an accompanying affidavit. Evidence may be considered on a motion for summary judgment only when that evidence is presented by the express means provided for in the Louisiana Code of Civil Procedure and/or the Uniform Rules, i.e. by affidavit or through discovery responses. As such, the State argues, the trial court should not have considered the audit report.
Documents may be considered in support of a motion for summary judgment if they are attached to a pleading that is in the record. Broadbridge v. Perez, 565 So.2d 1090, 1091 (La.App. 4 Cir.1990). Under La.C.C.P. art. 853, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Under La.C.C.P. arts. 852 and 853, the documents filed with the School Board's motion for summary judgment were parts of the pleading, and under La.C.C.P. art. 966, were properly considered by the trial court when ruling on the motion. Any doubt as to the authenticity of the copy of that report attached by the School Board to its motion could easily have been raised by the State in defense to the motion. The State chose not to traverse the report. We find that the trial court did not abuse its discretion in accepting Quillo's report, especially given the lack of any challenge to its authenticity or accuracy.
3. The trial court erred in considering the Motion for Summary Judgment because it requested adjudication by the trial court that exceeded its jurisdiction. The motion prayed that "this Court render judgment in its favor awarding to it all funds attributable to the mineral production for the sixteenth section of township 21 South, Range 27 East, Plaquemines Parish, Louisiana, which funds are on deposit in the registry of this Court pursusant to this concursus proceeding." Hunt's Petition seeks only a ruling as to the lands particularly described therein. It does not put the entirety of Section 16 at issue. Thus, the trial court had no authority to adjudicate the entirety of that section in the instant concursus proceeding, the State avers.
The trial court's judgment states that "the court is not directly ruling on the question of title to the Sixteenth Section in dispute, but only as to the rightful party to receive the funds on deposit attributable to" the Sixteenth Section at issue. This language was included to specifically address the State's objection to a potentially overbroad judgment. We find that the trial court did not exceed its jurisdiction. This assignment of error is without merit.
4. The trial court erred in finding that the School Board was entitled to summary judgment as a matter of law; and
5. The trial court erred in finding that the School Board was entitled to Summary Judgment because the School Board failed to establish that there were no genuine issues of material fact.
The State argues that lands (such as these) that have become Sea Bottoms formed at a Seashore since 1812 belong to the State of Louisiana. Further, in the prior suit, Plaquemines Parish School Board, ex rel. the State of Louisiana v. Plaquemines Parish Government, 96-0936 (La.App. 4 Cir. 2/26/97), 690 So.2d 232 *40 ("Prior Suit"), certain issues relevant to Section 16 were entertained. However, they did not preclude the State from judgment in the instant litigation, the State avers.
The State asserts that in the Prior Suit, the State originally appeared ex relatione on behalf of the School Board, who brought its claims therein against the Plaquemines Parish Government ("PPG"), the defendant in the Prior Suit. The purpose of the State's appearance in that matter ex rel was to simply make an argument on behalf of the School Board. During that litigation, the PPG reconvened and, alternatively, made a third-party demand against the State. The State briefly urged its own proprietary rights and interests as to the Section 16 or the Subject Lands therein, but voluntarily dismissed the claim. The rights litigated in the Prior Suit belonged to the School Board and the PPG. The State contends that its ownership rights were not adjudicated in the Prior Suit.
The Sixteenth Section at issue has already been adjudicated to the School Board. In the course of the Prior Suit, the State participated in several capacities: as the plaintiff, through the School Board who was statutorily authorized to represent the State; as a defendant-in-reconvention; and as a third-party defendant. The latter two appearances were in response to a claim in "warranty" by the defendant, PPG. The State excepted to the warranty claims, arguing that the Sixteenth Sections, including the one at issue herein, was subject to the School Lands Trust, and that as a result, "[t]he School Board of a particular parish shall receive the benefits from the Sixteenth Section lands, or indemnity lands, attributable to that particular parish ..." The Court accepted the State's argument, and dismissed the reconventional and third-party demand. This decision was affirmed on appeal. See State ex rel. Plaquemines Parish School Bd. v. Plaquemines Parish Government, 631 So.2d 5 (La.App. 4 Cir.1993), writ denied, 635 So.2d 243 (La.1994).
The State's participation in the prior litigation bars its present claim to the Sixteenth Section at issue. The State's contention that it appeared in a different capacity in the prior dispute, and that it was statutorily obligated to represent the School Board, is false. Rather, the School Board was authorized to represent the State, as it did when it filed suit:
The school boards of the various parishes of the state may contract with and employ on the part of the State of Louisiana, attorneys at law, to recover for the state, damages for trespass to the sixteenth section known as school lands, the title to which is still in the state. Each of these boards may make these contracts for the lands situated in its own parish and no others. The school boards may also sue for and recover the sixteenth section known as school lands.
La. R.S. 41:961.
The State was not obligated to appear in the prior litigation to support or defend the School Board's interest or position. The State appeared as defendant in response to a reconventional demand and third-party demand in warranty filed by the main defendant, the PPG. One answer to the warranty claim could have been the State's present contention: that neither the School Board nor the Parish ever owned the lands at issue because they were "sovereignty lands" and could not be divested from the State. Instead, the State defended the warranty claim by affirmatively acquiescing in the School Board's contention that the land was subject to the School Lands Trust, at least to *41 the extent that the School Board was entitled to the revenues derived therefrom.
Furthermore, the State's current argument that the Sixteenth Section at issue belongs to it because it is "sovereignty land"  land that was part of the navigable waters of the State upon its admission to the Union and became property of the State under the "equal footing" doctrine, not subject to the School Lands Trust imposed on federal public lands  has already been rejected. This argument was made by the PPG in the prior litigation, in opposition to the School Board's claim of title.
The trial court rejected this argument, based on the State's selection of the Sixteenth Section at issue as "swamp land," under the Swamp Lands Act. Given the State's selection of the Sixteenth Section as swamp lands, at least at the time that selection was made, the State believed that the land (1) was not navigable, but was instead swamp; and (2) that the land had not already been conveyed to it under the Equal Footing Doctrine, and was still part of the federal lands subject to conveyance to the State under the Swamp Lands Act.[2] Furthermore, the State submitted the determination of the character of the land to the Department of the Interior. The Department of Interior found that the land was not navigable water, but was "school land" that was ineligible to be transferred under the Swamp Lands Act because it already belonged to the State of Louisiana, in trust for the benefit of the schools.
In its oral reasons for judgment, the trial court stated, "I believe that were we to retry this matter or were we to try this matter on the issues suggested are material facts in dispute by Mr. Ottinger, we would simply be retrying the prior litigation with just a very, very slight realignment of the parties, if at all ... The matter has been litigated and I think that the factual determinations have been made... [I]n the context of this Motion, the facts are undisputed, and I think that the School Board is entitled to a Judgment recognizing that the School Board is the owner of the funds on deposit from production on that Sixteenth Section ..." We agree, and find that the motion for summary judgment was properly granted.

CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed. Further, we grant the Motion to Supplement the Record filed by the School Board, as well as the Motion for Leave to File Reply Brief submitted by the State.
AFFIRMED.
NOTES
[1] Quillo's report to the Court allocated the concursus funds on deposit among the various claims at issue in this proceeding.
[2] Swamp lands cannot be sovereignty lands, and vice versa. See State through Board of Commissioners of the Atchafalaya Basin Levee District v. Capdeville, 146 La. 94, 83 So. 421, 425 (1919) ("No property which fell within either category, that is the beds of navigable streams, lakes, etc. or those within the tidewaters of the sea, ever came within the operation of the Swamp Lands Act.").