Dear Mr. Clement:
On March 18, 2010, this Office issued La. Atty. Gen. Op. No. 09-0211 in response to an opinion request from you. You now seek clarification to reconcile the syllabus of the opinion (i.e., the short synopsis of the opinion included on the first page) with the conclusions of the opinion itself. In addition, you have also supplemented your original opinion request with some additional questions. All of these matters are considered herein.
The answer to your clarification request is that the syllabus, which represents only an effort to summarize the analysis and conclusions in the opinion, is not the controlling conclusion of the opinion. Rather, the conclusions stated within the body of the opinion represent this Office's actual conclusions related to your request. In an effort to minimize any confusion, we herebyrecall La. Atty. Gen. Op. No. 09-0211 and reissue that opinion herein in its entirety (including some additional clarifying language that does not impact the analysis or the result), with the correct syllabus. Because the opinion is hereby reissued anew, the substance of our response to your original request is reproduced below. *Page 2 
Original Opinion:
You have requested an opinion of this Office regarding the legality of a lease exchange agreement between Plaquemines Parish School Board ("School Board") and a private entity of a certain tract of land located in Plaquemines Parish. Specifically, you ask whether the School Board may undertake a "lease swap" of land identified as "River Lot 16," and more technically known as T20S, R18E, Sec. 16, for some privately owned property adjacent to Belle Chasse High School, thereby abating the need to go through the process of advertising the subject property for lease pursuant to the public bid laws.[1]
Classification of the Property
Typically, land identified as Section 16 or Sixteenth Section property is held in fee title by the State of Louisiana and is reserved for the use of schools in the township in which the land is situated.[2] The law that applies to the sale, lease, and exchange of traditional sixteenth section land is unique.[3] However, based upon the voluminous documentation that you have provided to this Office (which is summarized below), it is clear that this particular tract of land is not a "traditional" sixteenth section.
Traditional sixteenth section property is typically a full 640-acre tract of land, in place, that is part of the rectangular system of survey that was implemented nationwide by the United States government as new territory was acquired.[4]
Congress, in 1806, set aside every sixteenth section for use by the schools in the local jurisdictions.[5] This property vested, in fee simple interest, in the State upon statehood, to be utilized for the benefit of its schools.[6]
Generally exempted from this allocation of lands to the State for the use of schools were lands that were already reduced to private ownership at the time that the federal government acquired new territory. Such property in Louisiana was often 40 or 80 arpent-deep tracts along water courses that was patented or granted to private individuals by the former sovereigns of France or Spain.[7] Although these tracts were often incorporated into the American rectangular system of survey by assigning them numbers in the usual fashion, those that happened to be numbered "16" were not converted from private ownership to *Page 3 
government ownership by virtue of the number assigned to them.[8]
Thus, because the private landowner retained title to these sixteenth sections, the State and its schools were "shorted."[9]
In these cases, in order to compensate for such shortages, other provisions were made by the federal government (e.g., in 1826) for school lands within that particular township.[10] This compensatory acreage from the United States to the State is referred to as "indemnity land." For the same reasons, and also because of intervening navigable water bodies (which are owned by the State of Louisiana by virtue of its inherent sovereignty, vesting upon statehood on April 30, 1812) in some sections sixteen, the section may contain less than 640 acres; these acreage-shortages could also be compensated for by the granting of indemnity lands.
The property that is the subject of your opinion request, as is noted above, is a river lot. Indeed, the maps that you have included with your request, at first glance, would seem to indicate that this property simply happened to be numbered "16," and that due to its size (i.e., less than 640 acres) and location (i.e., along the Mississippi River), would have been property patented or granted by a former sovereign prior to statehood in 1812. However, as is clearly demonstrated from your documentation, [11] the subject property was not patented or granted by Kings Louis XIV or Louis XV of France, Napoleon Bonaparte, or King Charles III of Spain — all former sovereign rulers of the relevant portions of the territory now known as Louisiana, or patented or otherwise granted to a private person by the United States of America during its "ownership" in the years 1804-1812. Rather, this property, as indicated on the Tobin map enclosed with your original request, was acquired in fee title by the United States when it acquired the Louisiana Territory by title change, effective December 20, 1803. Thus, unlike most typical river lots (also known as radiating sections) of less than 640 acres, the subject property was not reduced to private ownership either by France, Spain or the United States prior to its incorporation into the United States.
Further making the subject property unique is the reality that this sixteenth section was never granted to the State as school land by the act of Congress in 1806.[12] Instead, the United States continued to hold fee title to this property until it was severed from federal ownership as indemnity land under the authority of 4 Stat. 179 (1826).[13] *Page 4 
As previously noted, indemnity land is the name for property that was provided by the federal government to the states to make up for shortcomings in prior-granted sixteenth section lands, or for sixteenth sections that are less than 640 acres by a partial "prior grant" or by the presence therein of State-owned navigable water bodies.[14] In other words, if a particular sixteenth section that was given to a state for use by its schools was, by survey, determined to be less than 640 acres or if a particular sixteenth section was wholly or partially located (by happenstance) on the sovereign water bottoms of a state, the federal government would allow the state to select indemnity land from other unappropriated public federal lands within the state to make up for the difference in acreage.[15] Although, in most cases, indemnity land is dealt with under sixteenth section law due to the shared character of the land (i.e., both are given to the State as dedicated land for school use), as discussed more fully below, under some circumstances, there is different law that applies to indemnity land, but not to "normal/regular/traditional" sixteenth sections.
It is within this historical framework that any consideration of the disposal (whether by sale, lease, or exchange) of the subject property must be examined. The legal framework necessary to answer your request follows.
Exchange and Lease of School Lands, Generally
School boards are constitutionally permitted to exchange property when such an exchange (which would encompass the "lease swap" here contemplated) is in the best interests of the schools.[16] We addressed the applicability of the public bid process to such exchanges in La. Atty. Gen. Op. No. 01-0321:
 . . . LSA-R.S. 17:87.6 authorizes any parish [school board] or city school board to sell, lease or otherwise dispose of, at public or private sale, for cash or on terms of credit, any school site, building, facility or personal property which is not used and, in the judgment of the school board, is not needed in the operation of any school or schools within its jurisdiction. Any such sale, lease or disposal of such school property shall be on such terms and conditions and for such consideration as the school board shall describe.
 We take cognizance of the fact that LSA-R.S. 41:891 et seq partially repealed LSA-R.S. 17:87.6 as a more recent expression of legislative will, but this office has previously concluded that the repeal is with regard to sales of school board property [only], not exchanges [or leases], and LSA-R.S. 17:87.6 remains viable *Page 5 
relative to dispositions other than sales, more specifically, exchanges of property or leases. (See Atty. Gen. Op. No. 75-1261, Atty. Gen. Op. No. 80-275, and Atty. Gen. Op. No. 93-130).
Thus, previous opinions of this Office have noted that the exchange or lease (which would, we opine, include a "lease swap") of certain property by school boards need only comply with La.R.S. 17:87.6 and not La.R.S. 41:891, et seq.[17]
Louisiana Revised Statute 17:87.6 does not carry with it the requirement that the school board advertise the proposed exchange or lease or put the proposed exchange out for auction or bids. The only restriction on the exchange or lease of school board property, under La.R.S. 17:87.6, as noted by previous opinions of this Office, is that the acquired property must be used for school purposes.[18]
After careful consideration, it continues to be our opinion that the exchanges of school board lands under La.R.S. 17:87.6 (provided that La.Const. Art. VII, Sec. 14, [19] is not violated due to property value differences) can validly be accomplished without public advertisement or bids/auctions.[20]
This basic legal framework is not applicable to sixteenth section and indemnity lands.[21] Because the purpose of indemnity land is to account for sixteenth section land shortages and because the sixteenth sections are provided to benefit the schools of a state, caution must be employed so as not to undermine this charge on the land. Accordingly, we opine that, the general law related to the divestiture of surplus property does not apply to indemnity lands (the same as it does not apply to sixteenth section lands).[22] Nonetheless, in situations of exchanges of school board property other than sixteenth section and indemnity school lands, we here adopt the reasoning expressed in La. Atty. Gen. Op. No. 01-0321 for the purposes of your opinion request, as we believe that it continues to represent sound legal reasoning. *Page 6 
It is thus the opinion of this Office that the sale, lease, or exchange (encompassing the contemplated lease swap) of school board property, generally, may be undertaken by a lease or an exchange, or a lease-exchange, assuming that the proper procedure is followed.[23] The law does allow for any such transfer of the subject property without the need to follow the advertising and competitive bid requirements of the public bid law. However, due to the classification of the subject property as indemnity lands, there is a unique additional procedure that must be followed.
The Lease or Exchange of Indemnity Land, Specifically
Indemnity land in Louisiana, though provided to account for incomplete sixteenth sections, is not always subject to the exact same law as sixteenth sections. In particular, the sale of indemnity lands is separately provided for by statute.[24]
However, there are no specific provisions in the sale statute for the lease or exchange of indemnity land. Rather, it appears that these activities are covered by the general law related to the sixteenth section lands.[25]
The School Board's general authority to divest indemnity lands, as noted above, is subject to the restrictions on the disposal of sixteenth section lands.[26] The special nature of these lands is confirmed by the provisions of La.R.S. 41:891, et seq., governing the disposal of unused school lands, which specifically exempts sixteenth section and indemnity lands from its coverage. Thus, the relevant law for the lease and exchange of sixteenth section and indemnity lands, (and, therefore, the subject property) is found at La.R.S. 41:711, et seq.
This law contains no provisions allowing an exchange of sixteenth section property. Therefore, because the School Board may not exchange sixteenth section land, it is the opinion of this Office that it similarly cannot exchange the subject indemnity land.
Recognizing that the contemplated "lease swap" may not be identical to a property exchange, we here present the School Board's options for other dispositions of the subject property. The sale or lease (but not exchange) of sixteenth section (and thus, indemnity) lands is permitted, but it must meet the statutory requirements of La.R.S. 41:711, et seq. Under this law, a school board may only lease these lands if a majority of the registered legal voters are against *Page 7 
the sale of the land.[27] Thus, it is the opinion of this Office that, should the School Board wish to style the "lease swap" as a lease (a lease being permissible under the law) that it must take the sense of the voters regarding the sale of the property first. If, and only if, the voters are against the sale of the subject property can the School Board then proceed with its lease.[28]
Clarification Request — New QuestionsPresented:
In your request to clarify La. Atty. Gen. Op. No. 09-0211 (herein now recalled), you added the following question to your original request:
 Since my first request, the question has arisen regarding the actual owner of the [subject] property. As stated in my original request the land appears to be owned by the Plaquemines Parish School Board. Ownership is in question. Please address the additional issue of who own[s] the property at issue.
 As a result of PPG vs. PP School Board, No. 31,947, Division A, Filed: January 29, 1996 involving (13) 16th Section properties, the properties found to be owned now by the School Lands Trust were as follows:
 T19S, R18E
 T20S, R19E
 T21S, R30E
 T22S, R31E
 T23S, R31E
 T21S, R26E
 T21S, R27E
 T21S, R29E
 The 16th Sections found to be owned now by the Parish are, as follows:
 T18S, R25E
 T19S, R26E
 T20S, R26E
 T20S, R27E
 T22S, R30E *Page 8 
 The property which is the subject of this request was not included in the action referenced above.[29]
It is clear from your recitation of Plaquemines ParishGovernment ("PPG") v. Plaquemines Parish School Board, above, that the subject property was not included in that lawsuit.[30] Because indemnity lands are, with the "sale exception" noted above, subject to the same law as regular sixteenth section lands, there is a presumption that the subject property is owned in fee by the State, with the management of said land falling to the relevant school board(s) for which the indemnity land was granted.[31] Although the court in the above-mentioned case held that certain sixteenth sections are now owned in fee by PPG and certain others by the School Board, this would not be the default scenario for any sixteenth section lands, and therefore not for school indemnity land either. In the absence of any documentation or final, unappealable judgments stating otherwise, the State, rather than the Parish or School Board, is the presumptive owner of sixteenth section and indemnity lands.[32]
Thus, based on the information that you have provided to this Office, it is our opinion that the subject *Page 9 
property is owned by the State, with the authority to manage the property falling to the School Board.[33]
Conclusion
The subject tract has a unique history. The documentation that you provided clearly demonstrates that this property was never reduced to private ownership. River Lot 16 is a section that just happens to be numbered sixteen in sequence with the other relatively small (less than 640 acres) river lots, but which, like them, was not given to the State as school lands. Rather, the property was federal land that was selected by the State of Louisiana as indemnity land, resulting in "transfer of title from Federal ownership to the State of Louisiana."[34]
It is the opinion of this Office that the law of Louisiana with respect to sixteenth sections applies to the lease of this indemnity property. Accordingly, although the lease of sixteenth section or indemnity lands by a school board is permissible without the necessity of submitting to the public bid laws, specific provisions apply to the subject property as indemnity land that are actually more onerous than those imposed by the public bid laws. Thus, while there is no need for the School Board to follow the public bid law requirements in order to undertake this "lease swap," the fact that the land involved is indemnity land mandates that the lease laws specifically applicable to those types of land be followed (i.e., La.R.S. 41:711, et seq., and especially La.R.S. 41:716, which requires that a majority of the legal voters be against the sale of the land). Further, our answer to the additional question that you posed in your clarification request does not change the above-noted conclusions. The reason for this is that, in our opinion, the subject land must, in the absence of documentation, or a judgment which is res judicata as to the State stating that the indemnity land at issue is no longer held in fee by the State, be treated according to the same lease laws of as those that apply to regular sixteenth sections, and school indemnity lands. *Page 10 
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By:_____________________ ANDREW J.S. JUMONVILLE RYAN M. SEIDBEANN Assistant Attorneys General
 JDC/RMS/AJSJ/tp
[1] La.R.S. 38:2211, et seq.; La.R.S. 41:1211, et seq.
[2] La. Atty. Gen. Op. No. 05-0068.
[3] Id.; see also
La. Atty. Gen. Op. Nos. 05-0172 and 06-0214; Ryan M. Seidemann,Curious Corners of Louisiana Mineral Law, 23 TUL. ENVTL. L.J. 93, 102-118 (2009).
[4] John Madden, FEDERAL AND STATE LANDS IN LOUISIANA 232 (1973).
[5] La. Atty. Gen. Op. No. 96-188; see also
Act of April 21, 1806 (2 Stat. 391).
[6] Id. See also Madden, supra, at 232; Papasan v.Allain, 106 S.Ct. 2932, 2941-2942 (1986); Alabama v.Schmidt, 34 S.Ct. 301, 302 (1914); Cooper v. Roberts, 18 How. 173, 182 (1855).
[7] Madden, supra, at 149-159.
[8] Id. at 237-238.
[9] Id. at 241-244.
[10] Id. See also item "H" discussed in note 30, infra, and the comments, infra, concerning the Act of 1826.
[11] Your documentation, which is on file with this Office, contains a complete title opinion on the subject property. Absent from the opinion is any reference to a grant from a prior sovereign. Also, please see the Felton letter, infra, note 12, which confirms these conclusions from the perspective of the federal government.
[12] Letter from A. Nate Felton, Acting Chief, Branch of Use Authorization, Bureau of Land Management, U.S. Department of the Interior, to Mark A. Pivach (Nov. 7, 2003) (copy on file with the Louisiana Department of Justice).
[13] Id. and discussion, infra, note 33.
[14] Seidemann, supra, at 111-112.
[15] Id.
[16] La.Const. Art. VI, Sec. 23; La. Atty. Gen. Op. Nos. 86-591, 01-0321, and 06-0285.
[17] See e.g.
La. Atty. Gen. Op. Nos. 01-0321 and 93-130.
[18] Id.
[19] The relevant language of La.Const. Art. VII, Sec. 14 is as follows:
 (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Except as otherwise provided in this Section, neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
[20] La.R.S. 41:891; La. Atty. Gen. Op. No. 08-0118.
[21] See La.R.S. 41:891, which notes that the process for the sale of school board lands,
 shall not apply to the sale of sixteenth section lands, school indemnity lands or any other school lands for the sale of which the law already has provided a procedure in Chapter 6 of Title 41 of the Louisiana Revised Statutes or elsewhere in the law.
In fact, the exclusive process for the lease of sixteenth section lands is set forth in La.R.S. 41:716 and La.R.S. 41:981.
[22] La.R.S. 41:891.
[23] The "proper procedure" referred to here is the requirements of La.R.S. 41:891, et seq., for the sale of school board property and La.R.S. 17:87.6 for the lease or exchange of school board property.
[24] See La.R.S. 41:801, et seq.
[25] La.R.S. 41:631.
[26] La. Atty. Gen. Op. No. 06-0214. This divestiture is, of course, subject to the specific provisions in La.R.S. 41:801, et seq., governing the sale of indemnity lands (i.e., leases and exchanges of indemnity lands, but not sales of same, are governed by the general law related to sixteenth section lands.
[27] See La.R.S. 41:716; La. Atty. Gen. Op. No. 06-0214.
[28] It is important to note that the ownership of these lands remains with the State. La. Atty. Gen. Op. No. 05-0068. This distinction is important, because although the School Board has the authority to sell and lease sixteenth section lands, the actual ownership remains with the State. Although important, this reality does not affect the analysis herein, as the School Board still has the authority to manage the land.
[29] Letter from Michael D. Clement, Esq. to James D. "Buddy" Caldwell, Attorney General, dated April 23, 2010 (on file with Louisiana Department of Justice) (emphasis in original). As used in the judgment cited in note 30, infra, the "School Lands Trust" simply refers to the classification of property as part of the sixteenth sections owned by the State in trust for the schools.
[30] At our request, you have also furnished us, as enclosures to your letter of June 18, 2010, copies of: (A) Judgment of the 25th Judicial District Court, Plaquemines Parish, in the case of State of Louisiana ex rel. PPSB v. PPG ("PPSB v.PPG"), Docket No. 31-947-A, dated January 29, 1996; (B) Reasons for Judgment in PPSB v. PPG, dated January 29, 1996; (C) Decision of the Fourth Circuit Court of Appeal in PPSB v.PPG, 96-0936 (La.App. 4 Cir. 2/26/97), 690 So.2d 232; (D) Unanimous denial of writs (without comment) by the Louisiana Supreme Court in PPSB v. PPG, 97-0793 (La. 5/9/97), 693 So.2d 768; (E) Letter dated July 31, 2009, from Mark A. Pivach, Esq., to ADA Michael Clement, relative to Pivach's contact with the United States Department of the Interior ("DOI"), Bureau of Land Management, regarding ownership of "River Lot #16 in T20S, R18E, Parish of Plaquemines" vis-à-vis, the United States, the State of Louisiana, and a private party and that Pivach was advised "that the USA does not claim ownership of [subject] River Lot 16, [which] has been transferred to the State of Louisiana, for the support of schools."; (F) Letter dated Nov. 7, 2003, to Pivach, from an official of DOI, involving Section 16, T20S, R18E, and enclosed materials [see (G), (H), and (I), infra], "which documents the transfer of title from Federal ownership to the State of Louisiana." This letter also notes that "the [DOI] records failed to disclose the issuance of a patent for the subject property." It goes on to point out that, "[t]he fact that a patent was not issued, however, does not affect the title to said land. The selection by the State through the above cited Act[s] [see (G) and (H),infra] released the United States of any claim to said land."; (G) Act of April 21, 1806, (2 Stat. 391); (H) Act of May 20, 1826 (4 Stat. 179); and (I) List of Indemnity School Selections, describing, inter alia, Section 16, T20S, R18E, containing 120.33 acres. While the remarks of the DOI official in the letter dated Nov. 7, 2003, does not, of course, have the effect of law, please note that he agrees with our conclusion that the subject property is owned by the State of Louisiana. In addition, for pragmatic reasons, such letter is as close as one can get — without an Act of Congress or a res judicata federal court decision — that the United States will not in the future claim ownership of the subject River Lot 16.
[31] La. Atty. Gen. Op. No. 05-0068. See also the discussion in note 33, infra.
[32] Id.
[33] As noted in note 29, supra, the Nov. 7, 2003, DOI letter included a copy of the pertinent Act of Congress for the selection of the subject property as part of Louisiana's Indemnity School Selections land. The pertinent language of the Act (4 Stat. 179) is, in our opinion, in perfect accord with our conclusions herein regarding the treatment of indemnity school lands in the same fashion as regular sixteenth section lands, as it provides:
 Sec. 2. And be it further enacted . . . and when so selected [by a state from a list prepared by "the Secretary of the Treasury, out of any unappropriated public land"], shall be held by the same tenure, and upon the same terms, for the support of schools, in such township [the applicable "acreage-shorted" township], as section number sixteen is, or may be held, in the state where such township shall be situated.
[Emphasis in original]. This language is about as close as we are likely to get without having trouble understanding 1826 syntax in terms of modern syntax (i.e., indemnity school lands are to be owned and treated as 640 acre in-place and not previously appropriated sixteenth section school lands are owned and treated).
[34] The quotation at the end of this sentence is taken verbatim from the DOI letter of Nov. 7, 2003, supra, note 29.