**STATE of Louisiana**

v.

**Walter Dan THOMPSON**

**NO. 2016–CA–0409**

Court of Appeal of Louisiana, Fourth Circuit.

NOVEMBER 23, 2016

Jeff Landry, Attorney General, Duncan S. Kemp, IV, Ryan M. Seidemann, Assistant Attorneys General, Civil Division, LOUISIANA DEPARTMENT OF JUSTICE, P.O. Box 94005, Baton Rouge, LA 70804,Frederick C. Whitrock, General Counsel, DEPARTMENT OF WILDLIFE & FISHERIES, P.O. Box 98000, Baton Rouge, LA 70898, Charles J. Ballay, District Attorney, Jerry Lobrano, II, Assistant District Attorney, 25TH JDC, PLAQUEMINES PARISH, 301–A Main Street, Belle Chasse, LA 70037, COUNSEL FOR PLAINTIFF/APPELLANT

George P. Vourvoulias, III, HARMON SMITH & VOURVOULIAS, LLC, 400 Poydras Street, Suite 1680, New Orleans, LA 70130, COUNSEL FOR DEFENDANT/APPELLEE

(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Rosemary Ledet)

Judge Rosemary Ledet

This is a quasi-criminal case arising out of the 1996 and 1997 arrests of the defendant, Walter Dan Thompson, and other individuals for various commercial fishing violations. The issue in this case is Mr. Thompson's right to the return of property that the Louisiana Department of Wildlife and Fisheries ("LDWF") seized in connection with his August 1996 arrest. On Mr. Thompson's prior appeal, this court ordered the trial court "to return Mr. Thompson's property, or the equivalent thereof, immediately." *State v. Thompson*, 02–1153, 02–1154, 02–1155 (La. App. 4 Cir. 11/13/02) (*unpub.*) ("*Thompson I*"). The principal issue before us on this appeal is the proper construction of the meaning of this court's order in *Thompson I*.

Construing this court's order in *Thompson I*, the trial court, in its October 8, 2015 judgment, granted in part and denied in part Mr. Thompson's Motion for Return of Property. From that judgment, the LDWF filed the instant appeal.[1] Mr. Thompson answered the appeal. For the reasons that follow, we affirm in part and reverse in

part. We also deny Mr. Thompson's request for frivolous appeal damages.

## FACTUAL AND PROCEDURAL BACKGROUND

In June and August 1996, Mr. Thompson and other individuals were arrested and charged with commercial fishing violations—violations of Title 56 regarding illegal commercial fishing. In connection with the August 17, 1996 arrests, the LDWF's agents seized four vessels—the *Queen Melissa*, the *Elizabeth R.*, the *White Dove*, and the *Donna Sue*. The LDWF's agents also seized equipment, including two large seines,[2] and the catch (the fish).[3] The LDWF's agents issued six seized property receipts—one for each of the vessels and one for each of the two large seines. The LDWF's agents also inventoried the equipment they seized from each of the vessels. It is undisputed that the LDWF's agents sold the fish that they seized.

On September 25, 1996, Mr. Thompson filed a Motion for Release of Seized Property in the Twenty–Fifth Judicial District Court. In this motion, Mr. Thompson admitted that three of the four seized vessels "were/are legally owned by other individuals/entities."[4] In this motion, he requested an order that all four seized vessels and

---

1. This appeal was actually filed by three state entities—the LDWF, the Louisiana Department of Justice and the Plaquemines Parish District Attorney's Office. For ease of reference, we refer to the LDWF as the sole appellant.

2. A seine is "a large net with sinkers on one edge and floats on the other that hangs vertically in the water and is used to enclose and catch fish when its ends are pulled together or are drawn ashore." MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2008).

3. Although Mr. Thompson alleges that at the time of his arrest he was the sole person in charge of a large purse seine fishing opera-

tion, the record reflects that Mr. Thompson was employed by Matthew and Wanda Raigan, who were doing business as Aero Fisheries, Inc. ("Aero"). As noted elsewhere in this opinion, Aero was charged with, and pled guilty to, violations of Title 56 regarding the same alleged illegal fishing activities in Orleans Parish Municipal Court. As a result of Aero's plea agreement, some of the property at issue here was forfeited.

4. He mistakenly referred to the *Donna Sue* as one of the three vessels that were owned by other individuals or entities. The record reflects, however, that the *Donna Sue* was the only one of the four vessels that Mr. Thompson owned.

"their equipment, gear, supplies and/or licensing and ownership documents" be returned to him. No mention is made in this motion of the seized fish. The Plaquemines Parish District Attorney's Office opposed the motion; it contended that the evidence might be required for the trial and that La. R.S. 56:322 C(6)[5] mandated the seizure of vessels, equipment, and catch; and that it does not authorize the release of said seizure property upon a defendant's pretrial motion.

On October 23, 1996, the trial court denied the motion; in so doing, the trial court stated as follows:

> In connection with the issuance of the citations, the citing Agent seized four vessels [the *Queen Melissa*, the *Elizabeth R.*, the *White Dove*, and the *Donna Sue*] belonging to the defendant Walter Dan Thompson, as well as their gear, nets, equipment and supplies. . . . The defendant also alleged that the seizures were a violation of his Constitutional and statutory rights of due process. The custodian of the property seized from the defendant is the Department of Wildlife and Fisheries. This Court has no authority to order the release of evidence being held by the Department of Wildlife and Fisheries as evidence and possible forfeiture [sic] after conviction.

On February 12, 1997, Mr. Thompson was charged by bill of information with failure to report data, in violation of La. R.S. 56:345. The bill of information stated that he failed to provide a commercial fishery data report to the LDWF for the following four months: October, November, and December of 1996; and January of 1997. Although the original bill of information charged Mr. Thompson with one count, an amended bill of information was filed on April 11, 1997, making the same allegations and dividing them into four counts (the "1997 Charges"). On March 3, 1997, Mr. Thompson pled not guilty to the 1997 Charges.

On June 10, 1997, Mr. Thompson; his wife, Donna Thompson; Mr. Raigan; his wife, Mrs. Raigan; and Aero filed a Petition for Writ of Mandamus and Damages against the LDWF in the Nineteenth Judicial District Court (East Baton Rouge Parish) (the "Mandamus Suit"). In the Mandamus Suit, they averred that "[t]o date, the funds from the fish seized on August 17, 1996 has not been delivered to Dan Thompson and should total $35,000.00 if the count would have been performed accurately and the fish would have been sold at prevailing market value." In the Mandamus Suit petition, they averred the LDWF represented that they unloaded the following from Mr. Thompson's catch: 8,365 lbs. of puppy drum; 3,104 head of bull drum, 128 lbs. of cobia, 52 lbs. of Pompano, and 225 lbs. of red drum.[6] They requested that

---

5. La. R.S. 56:322 C(6) provides as follows:
 (6) Purse seines.
 (a) The use of purse seines for the taking of finfish, other than menhaden and herring-like species, shall be prohibited in inside waters as delineated by R.S. 56:495.
 (b) The use of purse seines for the taking of finfish, other than menhaden and herring-like species, shall be prohibited in outside waters as delineated by R.S. 56:495.
 (c) Except as provided in R.S. 56:324, possession of red drum or spotted sea trout on board any vessel on which a purse seine is also on board, within or without the waters of Louisiana, is prohibited. Any agent who finds a vessel with such fish and equipment on board shall seize the vessel, fish, and equipment. Whoever violates the provisions of this Paragraph shall be fined eight hundred and fifty dollars per each hundredweight of red drum or spotted sea trout which are confiscated and shall forfeit each purse seine found on board at the time of confiscation.

6. They, however, averred that the LDWF unloaded 10,000 lbs. of puppy drum and 4,500 head of bull drum from the catch.

the LDWF be ordered to account for "all fish and proceeds seized." They further requested that a writ of mandamus be issued to the LDWF's Secretary directing that he release the four seized vessels and equipment.

On December 11, 1997, Mr. and Mrs. Thompson filed a Motion for Release of Seized Property in the trial court (Plaquemines Parish District Court). In their motion, they sought return of only one vessel—the *Donna Sue*. In their memorandum in support, they identified the owners of the four vessels the LDWF seized on August 17, 1996 as follows:

> [T]he *Queen Melissa*, owned by Matt and Wanda Ragain,[7] d/b/a Aero Fisheries, Inc.; the *Elizabeth [R.]*, owned by Matt and Wanda Ragain, d/b/a Aero Fisheries, Inc.; the *Miss Donna* [the *Donna Sue*] owned by Dan and Donna Thompson; and the *White Dove*, owned by Matt and Wanda Ragain, d/b/a Aero Fisheries, Inc.

Also on December 11, 1997, Mr. and Mrs. Raigan, doing business as Aero, filed a virtually identical Motion for Release of Seized Property. In their motion, they sought return of the three vessels they owned.[8]

Contemporaneously with the proceeding against Mr. Thompson in the trial court (Plaquemines Parish District Court), Aero was prosecuted in Orleans Parish Municipal Court for fishing violations. On December 17, 1997, Aero, represented by its president and sole stockholder, Mrs. Raigan, entered into a plea agreement with the LDWF (the "Plea Agreement"). Aero pled guilty and forfeited the following property seized in connection with the charges at issue in that matter:

1. The vessel *White Dove* (fishing vessel), LA 2757BJ, seizure tag No. 27502, together will all equipment thereon; and

2. The vessel *Melissa* (storage vessel), LA 3145CA, seizure tag No. 27504, together with all equipment thereon.

3. One seine with ¾" x 1 ½" mesh.

4. One seine with 1 ½" x 3" mesh.

The Plea Agreement further provided for the return of the *Elizabeth R.* to Aero and Mrs. Raigan on Monday, December 22, 1997, free of all storage fees, costs and liens. The seizure tag numbers for the forfeited vessels—the *White Dove* and the *Melissa*—matched the seizure tags at issue in this case.

On June 14, 2000, Mr. Thompson withdrew his former not guilty plea to the 1997 Charges and pled guilty to those charges pursuant to a plea bargain agreement. The trial court sentenced him on each of the four counts to pay $250 and costs or serve thirty days in parish prison, and to pay a $200 fee to the LDWF. The executory fines were due on July 20, 2000; and Mr. Thompson paid them in full. On June 14, 2000, the State dismissed Mr. Thompson's violations in Case Numbers 96–4562 and 96–5201.

One week later, on June 21, 2000, the State filed a motion to have "the articles held as seized evidence in anticipation of criminal prosecution and held in evidence

---

7. The last name "Raigan" is also spelled in the record as "Ragain." The documents in the record that were signed by Mrs. Raigan use the spelling "Raigan." Thus, we use that spelling in this opinion.

8. In both December 11, 1997 motions, it is noted that a hearing in the Mandamus Suit was scheduled and that the LDWF, in that suit, argued the proper forum for seeking relief under La. R.S. 56:59 (which provides for the release of seized property after the posting of security that has been fixed and court-approved) was in the trial court (Plaquemines Parish), which was where the prosecution was pending.

in the above numbered and styled matter be forfeited and destroyed since the case is now complete." On that same date, the trial court signed the order, which stated that "IT IS HEREBY ORDERED that all articles held as evidence in the above numbered and styled case be forfeited to the [LDWF] and that the department be authorized and empowered to destroy all articles held as such evidence." The record does not reflect that a hearing was held on that date; there is no minute entry for that date. The Order reflects that the parties served were the LDWF and Mr. Thompson.

In response, on June 30, 2000, Mr. Thompson filed a "Motion to Nullify, Vacate and/or Set Aside Order to Forfeit Evidence and to Empower Department to Destroy All Articles Held as such Evidence." Following a hearing, the trial court, on September 18, 2001, denied that motion. From that ruling, Mr. Thompson appealed.

On appeal, this court in *Thompson I* framed the sole issue presented as follows:

> [W]hether the trial court erred in ordering the forfeiture of evidence and ordering the Department to destroy all articles held as such evidence when forfeiture was not a part of the plea agreement and sentence, and when the motion was done by oral motion without notifying the defendant of the motion or hearing and without defendant appearing at the hearing.

9. The date March 15, 2004, was an apparent typographical error.

10. The trial court, at the hearing on the motion at issue on appeal, addressed in detail the issue of whether or not the LDWF and the Plaquemines Parish District Attorney's Office were served with the 2004 Judgment. In its written reasons for judgment, the trial court stated as follows:

In addressing this issue, we noted that "the record is silent as to what items, if any, were seized in connection with Mr. Thompson's violations of La. R.S. 56:345, Case Number 97–0945." *Thompson I, supra.* Continuing, we noted that the record, however, did reflect that Mr. Thompson previously was arrested and charged with other commercial fishing violations in Case Numbers 96–4562 and 96–5201. We further noted that "the record indicates that, pursuant to the violations in Case Number 96–4562, Mr. Thompson's gear, net, equipment, vessels and fish were seized." *Id.* Ruling in Mr. Thompson's favor, we reasoned that his sentence did not include any type of forfeiture. Accordingly, our decree was that "the trial court is hereby ordered to return Mr. Thompson's property, or the equivalent thereof, immediately." *Id.*

On October 9, 2003, Mr. Thompson filed a "Motion and Order to Enforce Decision of Court of Appeals [sic] Fourth Circuit." On December 18, 2003, the trial court heard and granted the motion. On June 15, 2004, the trial court issued a written judgment, which read as follows:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that the defendant's Motion to Enforce Decision of the Fourth Circuit Court of Appeals [sic] is granted. The State is ordered to return the defendant's property or the equivalent thereof by March 15, 2004. (the "2004 Judgment").[9]

The LDWF was not served with the 2004 Judgment.[10] According to the LDWF,

There is no documentary evidence in the record that either the LDWF or the Plaquemines Parish District Attorney's Office was served with the [2004] Judgment. However, at the hearing on the instant motion on August 20, 2015, this Court's civil minute clerk, Cynthia Dugas, testified that she was employed as a minute clerk in 2004, and that the district attorney's office would have

it did not become aware of the 2004 Judgment until September 2009. In October 2009, the LDWF contacted Mr. Thompson and requested that he retrieve the *Donna Sue*. In June 2010, Mr. Thompson did so.

On June 12, 2009, Mr. Thompson filed another "Motion and Order to Enforce Decision of Court of Appeals [sic] Fourth Circuit." On September 17, 2009, he withdrew this motion in open court. On January 7, 2010, Mr. Thompson filed yet another "Motion and Order to Enforce Decision of Court of Appeals Fourth Circuit and the 25th Judicial Court." In this motion, he alleged that the State had not returned all of his property. He further alleged that "[i]n October 2009, the defendant was allowed to pick up his property. The State only returned some of the items seized."[11] He thus requested an accounting of what property the State did not return to him and the reasons the State would not follow the court's order. On March 15, 2010, he withdrew this motion in open court.

On June 5, 2014, Mr. Thompson filed a "Motion for Writ of Distringas or, in the Alternative, Motion to Make Judgment Executory as Money Judgment, or, in the Alternative, Motion to Revive Money Judgment." In this motion, he requested the following relief:

- An order that the State, through the Plaquemines Parish District Attorney and the LDWF, comply with this court's order in *Thompson I* as required by the 2004 Judgment ordering the return of his property that

was seized consisting of "various vessels, related equipment, and catch, as further detailed in the accompanying affidavit of Walter Dan Thompson" (the "Affidavit");

- An adjudication that the State was in contempt for failing to comply with the 2004 Judgment; and
- An order that the State pay damages to Mr. Thompson attributable to its failure to comply with the 2004 Judgment.[12]

In support of his Motion for Writ of Distringas, Mr. Thompson provided an expert report, dated May 2015, valuing the property seized—the four vessels and two large purse seine nets (LDWF's agents property receipts with numbers 27502 through 27597)—as of the date of the seizure, August 17, 1996. The report values the four vessels at $560,000.00 and the purse seine nets at $75,000.00 (a total of $635,000.00). Mr. Thompson also provided the Affidavit.

In the Affidavit, Mr. Thompson acknowledged that the State returned one of the vessels, the *Donna Sue*, to him. He itemized the remainder of his seized property as having an approximate appraisal value of $652,663.50. Included in this figure were the value of the three other vessels, the equipment and supplies on those vessels, the equipment and supplies on the *Donna Sue*, and the value of the entire catch (the fish). In the Affidavit, he inventoried the fish collectively—as opposed to by vessel—as follows:

---

been served with the Judgment as a matter of course.

11. According to the LDWF, this motion was the first time Mr. Thompson potentially sought to recover property that he did not own.

12. In the alternative, Mr. Thompson requested that if the State is unable to return his

property, the court award him damages in the amount of $652,663.50, representing the appraised value of the property plus judicial interest. In the further alternative, he requested that the trial court's June 15, 2004 judgment be revived in the amount of $652,663.50 plus judicial interest, so as to avoid the running of prescription in the event it is considered a money judgment.

- 8,365 lbs. of puppy drum fish (@ $1.50/lb.): $12,548
- 3,104 lbs. (4,500 head) of bull drum (@ $5 per head): $22,500
- 128 lbs. of cobia (@ $2.50/lb.): $320
- 52 lbs. of Pompano (@ $4.00/lb.): $208
- 225 lbs. of red drum (@ $15.50/lb.): $1,237.50.[13]

On July 2, 2014, the trial court, without a hearing, denied all the relief requested in the Motion for Writ of Distringas and instructed that Mr. Thompson "[r]e-file as a civil matter based on the judgment of the court of appeal." Mr. Thompson did not follow that instruction; instead, on December 8, 2014, he filed a Motion for Return of Property in the criminal case. Citing La. R.S. 15:41 and the 2004 Judgment, Mr. Thompson requested the return of his property or the monetary equivalent thereof that was seized by the LDWF on August 17, 1996. He, however, failed to identify the property that he sought to be returned to him. He also failed to file a memorandum in support of the motion.

In response, on January 15, 2015, the LDWF filed three peremptory exceptions—no cause of action, no right of action, and prescription. The LDWF explained that the basis for its exception of no cause of action was that the motion—albeit not a petition—was "utterly devoid of any specific factual allegations" and "improperly seeks a new claim in the form of damages (i.e. the monetary value of the property.)" Its exception of no right of action was based on two grounds: (i) Mr. Thompson has no right of action as to property owned by Aero or other parties; and (ii) he has no right of action as to the fish seized in 1996. Finally, its exception of

prescription was based on two grounds: (i) the entire action is prescribed given the LDWF has no duty to retain property seized for more than two years, La. R.S. 56:62; and (ii) as to any equipment allegedly damaged on Mr. Thompson's vessel (the *Donna Sue*), the claim for conversion is prescribed by one year from no later than June 2010 when he retrieved his vessel.

On January 22, 2015, a hearing was held on the Motion for Return for Property and the LDWF's exceptions. At the hearing, which was limited to the issue of whether Mr. Thompson was entitled to the return of the property (as opposed to the value of the property), the parties introduced evidence. The issue of whether the 2004 Judgment was served on the LDWF or the Plaquemines Parish District Attorney's Office or both was also addressed at the hearing.

On May 29, 2015, while the motion and exceptions were pending, Mr. Thompson filed a "Motion and Order to Enforce Decision of Court of Appeals (sic) Fourth Circuit and the 25th Judicial District Court." In his memorandum in support of this motion, he pointed out that no party appealed the 2004 Judgment; that no party filed a writ seeking review of this court's May 2002 judgment with the Louisiana Supreme Court, and that therefore both judgments were final, unappealable, and *res judicata*. He requested the trial court establish a monetary value for the seized property of $635,000.00. He attached to the motion copies of the LDWF's six seized property receipts and the Affidavit (the same affidavit that was attached to the Writ of Distringas in which he itemized the

---

**13.** The quantity of fish seized noted in the Affidavit parallel those alleged in the Mandamus Suit. Mr. Thompson estimated in the Affidavit that the value of the entire catch was $49,813.50. At the hearing, Mr. Thompson's attorney referred to the fish as having a value of $60,000.

property seized and calculated an approximate appraisal value of the seized property of $652,663.50).

On October 8, 2015, the trial court denied LDWF's exceptions of prescription and no cause of action,[14] and denied in part and granted in part its exception of no right of action. The trial court rendered judgment granting Mr. Thompson's Motion for Return of Property "only as to the vessel *Donna Sue* and the equipment and fish thereon at the time of that vessel's seizure." In all other respects, the trial court denied the Motion for Return of Property and dismissed it with prejudice reasoning that "defendant was not the legal owner of any of the other property he claims." From this judgment, the LDWF filed the instant appeal; Mr. Thompson answered the appeal.

## DISCUSSION

Although the parties raise several issues,[15] we organize our analysis around the following three separate seized items at issue:

i. The Three Vessels Owned by Third Parties

ii. Equipment on the *Donna Sue*

iii. The Fish on the *Donna Sue*

*The Three Vessels Owned by Third Parties*

Rejecting Mr. Thompson's argument that he was entitled to the return of the other three vessels he did not own, the trial court, in its written reasons for judgment, reasoned as follows:

[T]he Fourth Circuit's opinion does not refer to any specific items of property. In fact, the Fourth Circuit noted that the trial court record did not specifically name what property belonging to defendant had been seized pursuant to the trial court's seizure order. [*Thompson I, supra.*]. The Fourth Circuit simply ordered the trial court to return "Mr. Thompson's property" or the monetary equivalent thereof. Since defendant has failed to prove that he owned any of the seized property aside from the *Donna Sue*, its equipment, and the catch that was seized from it, this Court finds that the Fourth Circuit's opinion is only *res judicata* as to those items.

The trial court thus granted in part LDWF's exception of no right of action and found that Mr. Thompson was not entitled to the return of the three vessels

---

14. The trial court denied the exception of no cause of action on the basis that "defendant's filing is a motion rather than a petition" and "an exception of no cause of action does not lie" from a motion. The ruling on that exception is not disputed. The trial court's reasoning as to the other two exceptions, which is disputed, is addressed elsewhere in this opinion.

15. LDWF's assignments of error are as follows:
 1. Whether the trial court erred when it granted in part the Defendant's Motion for Return of Property and denied LDWF's Peremptory Exception of Prescription as to any of the Defendant's property seized from or located upon the vessel, *Donna Sue*, when the Appellant, which was never served with

the Judgment, complied with the Judgment, but the Defendant subsequently failed to act upon any alleged condition of the property for over four years after having actual knowledge as to the alleged condition of that equipment.
 2. Whether the trial court erred when it denied Appellant's Exception of Prescription as to the entire matter when the Appellee had actual and constructive knowledge that the Appellant was exercising dominion over property allegedly owned by the Appellee, but failed to act for over ten years.
 3. Whether the trial court incorrectly granted in part the Defendant's Motion for Return of Property when the Defendant had no right to the value of any fish that were seized.

owned by third parties, including his former employer, Mr. and Mrs. Raigan doing business as Aero. The trial court also granted, in part, Mr. Thompson's exception of *res judicata* and found that Mr. Thompson was entitled to the return of his property—the *Donna Sue* and the equipment and fish that were seized from that vessel.

The standard of review of a ruling on an exception of no right of action, which presents a question of law, is *de novo*. See *Lakewood Prop. Owners' Ass'n v. Smith*, 14–1376, p. 7 (La.App. 4 Cir. 12/23/15), 183 So.3d 780, 785–86, *writ denied*, 16–0138 (La. 2/26/16), 187 So.3d 469 (citing *Hornot v. Cardenas*, 06–1341, p. 12 (La.App. 4 Cir. 10/3/07), 968 So.2d 789, 798. "The standard of review for an appellate court is simply whether the trial court's interpretative decision is legally correct." *Lakewood Prop. Owners' Ass'n*, 14–1376 at p. 7, 183 So.3d at 785–86 (citing *Hospitality Consultants, LLC v. Angeron*, 09–1738, p. 6 (La.App. 4 Cir. 6/9/10), 41 So.3d 1236, 1240). Similarly, "[t]he standard of review of a peremptory exception of *res judicata* requires an appellate court to determine if the trial court's decision is legally correct or incorrect." *Joseph v. Hartford Ins.*, 15–1218, pp. 3–4 (La.App. 4 Cir. 4/6/16), 191 So.3d 647, 650 (citing *Ins. Co. of North America v. Louisiana Power & Light*, 08–1315, p. 5 (La.App. 4 Cir. 3/4/09), 10 So.3d 264, 267).

On appeal, Mr. Thompson contends that the trial court erred in failing to grant his exception of *res judicata* as to all the seized property. The gist of his argument is that this court in *Thompson I* decided the issue of what was Mr. Thompson's property that was to be returned to him.

In support, he quotes the following statement in *Thompson I* as dispositive: "the record indicates that, pursuant to the violations in Case Number 96–4562, Mr. Thompson's gear, net, equipment, vessels and fish were seized." (Emphasis supplied). He points out that no party filed a writ seeking review of this court's May 2002 judgment with the Louisiana Supreme Court and that this court's decision is thus *res judicata*. It follows, he contends, that the LDWF is precluded from re-litigating his right to the return of all four vessels and the equipment and catch seized from those vessels. He thus contends that the LDWF should not be able to dispute his ownership of the seized items or to raise statutory defenses to his right to the fish.[16]

The LDWF counters that Mr. Thompson's claim is based on one misplaced "s" at the end of the word vessel in dicta in this court's opinion in *Thompson I*. It further counters that *res judicata* is not implicated here given that it is merely seeking an interpretation of the effect of this court's order that it return "Mr. Thompson's property." The LDWF points out that there is a difference between re-litigating judgments and seeking an interpretation of the effect of judgments. Additionally, it emphasizes that although Mr. Thompson, at the time of the seizure, was in possession of the four seized vessels, his former employer owned three of those vessels and forfeited much of that property in the Plea Agreement in Municipal Court. The LDWF contends that Mr. Thompson's argument conflates his property with the seized property. Finally, it contends that to interpret *Thompson I* and the 2004 Judgment as requiring the LDWF to "pay

---

**16.** In connection to this argument, Mr. Thompson also argues in his answer to the appeal that the trial court erred in allowing the LDWF to introduce evidence at the hearing. Mr. Thompson's counsel, however, failed to object to the introduction of evidence at the hearing. This argument is thus unpersuasive.

to Mr. Thompson the monetary value of property that he has never owned would be to adopt the most absurd interpretation of those Judgments."

 *Res judicata* is not applicable when, as here, an appellant is "not attacking the judgment itself, but rather seeking an interpretation of the prior judgment's effect." *Succession of Brantley*, 96–1307, p. 6, n. 5 (La.App. 1 Cir. 6/20/97), 697 So.2d 16, 19. "Just as statutes are subject to interpretation, the same is true about the rulings of courts." *Saacks v. Mohawk Carpet Corp.*, 03–0386, p. 20 (La.App. 4 Cir. 8/20/03), 855 So.2d 359, 372. Similarly to statutory construction, "the ruling ⌐16of a court should be interpreted to avoid a construction that would lead to absurd results. The ruling should be interpreted in such a manner as to render its meaning rational, reasonable, and logical." *Id.*

 Applying these principles, we find, contrary to Mr. Thompson's contention, that our holding in *Thompson I* was limited to an order that the trial court return the property belonging to Mr. Thompson, not all the seized property. Indeed, in *Thompson I*, the only issue before us was whether the penalty imposed on Mr. Thompson as a result of his plea bargain could be increased by forfeiting his property that was seized. The scope of Mr. Thompson's property was not an issue before us; rather, the issue before us focused on Mr. Thompson's due process rights to his property. We thus find Mr. Thompson's reliance on the doctrine of *res judicata* misplaced. Likewise, to the extent the trial court relied on *res judicata* in finding

Mr. Thompson was entitled to the return of the equipment and the fish on the *Donna Sue*, it erred. Mr. Thompson's right to such property must be based on proof that he owned it.

 Turning to the exception of no right of action, we find no error in the trial court's grant in part of the exception as to the three vessels Mr. Thompson did not own. At the hearing before the trial court, the LDWF introduced the following evidence establishing Mr. Thompson owned only one of the four seized vessels—the *Donna Sue*:

- Mr. Thompson's previous admissions in his prior pleadings that the only seized vessel he owned was the *Donna Sue*.
- The official LDWF boat registration records reflecting that Mr. Thompson owned only one of the four seized vessels, the *Donna Sue*.
- ⌐17 The Plea Agreement and transcript in Orleans Parish Municipal Court between Aero (through Mrs. Raigan) and the LDWF, reflecting the forfeiture of two of the seized vessels.[17]
- The seizure tags for the vessels forfeited by Aero in Municipal Court, which match the seizure tags in this matter.

Based on this evidence,[18] we find no error in the trial court's finding that Mr. Thompson failed to establish that he owned the other three vessels.

 As the party seeking the return of seized property, Mr. Thompson had the burden of proving ownership of the prop-

17. As the LDWF points out, the registration records also confirm the legal effect of Aero's forfeitures as a result of its Plea Agreement.

18. Although Mr. Thompson contends in his answer to the appeal that the trial court erred in allowing the LDWF to introduce evidence, the record reflect that counsel for Mr. Thomp-

son did not object at the hearing to the evidence being introduced. This argument is thus unpersuasive. We further note that this argument was premised on the application of the doctrine of *res judicata*, which we find inapposite.

erty he seeks to recover. *See State v. Higginbotham*, 49,395 (La.App. 2 Cir. 10/1/14), 150 So.3d 505; *Papworth v. Truxton Corp.*, 357 So.2d 1198, 1203, n. 1 (La. App. 4th Cir. 1978) (Lemmon, J., concurring) (noting that the claimant seeking ownership has the burden of proof). Mr. Thompson failed to establish ownership of the three other vessels. We thus find no error in the trial court's finding that Mr. Thompson was not entitled to the return of the three other vessels and the equipment and fish seized from those other vessels.

The issue before us is thus narrowed to whether the trial court erred in holding that Mr. Thompson was entitled to the return of the equipment and the fish that were seized from the *Donna Sue*. (As noted elsewhere, it is undisputed the *Donna Sue* was returned to Mr. Thompson in June 2010.) We separately address the claims regarding the equipment and the fish.

*Equipment on the "Donna Sue"*

As to the equipment on the *Donna Sue*, we find no error in the trial court's finding that Mr. Thompson had a right of action; however, as explained below, we find the trial court erred in failing to find that his claim is prescribed. The standard of review of a peremptory exception of prescription depends on whether evidence was presented. *Miralda v. Gonzalez*, 14–0888, pp. 17–18 (La.App. 4 Cir. 2/4/15), 160 So.3d 998, 1009.

"When prescription is raised by peremptory exception, with evidence being introduced at the hearing on the exception, the trial court's findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review." *Miralda*, 14–0888 at p. 17, 160

So.3d at 1009; *see also Richard v. Richard*, 11–0229, p. 4 (La. 10/25/11), 74 So.3d 1156, 1158. Under the manifest error standard, "[i]f the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed evidence differently." *Richard, supra* (citing *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880 (La. 1993)).

In overruling the LDWF's prescription exception, the trial court reasoned that "[t]he LDWF provides no authority, and this Court knows of no authority that holds that an order from a court of appeal directing a district court to act is subject to prescription." The trial court thus reasoned that it was bound to comply with this court's 2002 opinion mandating that it order the return of Mr. Thompson's property to him. The trial court's reasoning, however, overlooks that the LDWF attempted to comply with this court's order in *Thompson I* and the 2004 Judgment by returning what it believed to be Mr. Thompson's property—the *Donna Sue*—in June 2010. At that point, the burden shifted to Mr. Thompson, if he believed either that his property that was returned to him was damaged or that the LDWF had failed to return all of his property, to file a conversion claim. Stated otherwise, any claim for the deterioration of the *Donna Sue* or the equipment that was missing from the *Donna Sue* when it was returned to Mr. Thompson was a new cause of action for conversion.[19] Such a conversion claim was subject to a one-year prescriptive period under La. C.C. art. 3492. *See*

---

19. "A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion." *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 760 (La. 1985).

*Dillon v. City of New Orleans*, 534 So.2d 1373 (La. App. 4th Cir.1988) (applying one year prescriptive period for wrongful conversion of seized property). Because Mr. Thompson failed to file a timely conversion claim, the LDWF contends that any claim for the equipment and supplies on the *Donna Sue* is prescribed. *Dillon, supra.*[20] We agree. For this reason, we reverse the trial court's award of the return of the equipment on the *Donna Sue.*

### The Fish on the "Donna Sue"

 As to the fish on the *Donna Sue*, we find the trial court erred in finding Mr. Thompson had a right of action and that any right of action as to the proceeds from the sale of the fish is precluded by statute. In its judgment, the trial court ordered that Mr. Thompson was entitled to the return of the fish that was onboard the *Donna Sue* at the time of the seizure or the monetary equivalent thereof.[21] In finding Mr. Thompson was entitled to the return of the fish on the *Donna Sue*, the trial court erred, factually and legally.

Factually, the record reflects that the seized fish were treated differently from the other seized property. At the time of the seizure, the LDWF agents issued seized property receipts for both the vessels and the large seine nets and inventoried the equipment seized from each of the vessels. The LDWF agents neither separately identified the vessel (or vessels) from which the fish was seized, nor issued any seized property receipt for the fish. Instead, the LDWF agents sold the fish.

Shortly after the seizure, Mr. Thompson filed motions for return of the property in which he requested the return of the vessels and equipment; however, he made no request for the return of the fish in those motions. Instead, on June 10, 1997, Mr. Thompson filed the Mandamus Suit seeking to have the LDWF account for "all fish and proceeds seized." When Mr. Thompson did assert entitlement to the return of the fish in his Writ of Distringas, he did so as to the entire catch, collectively.[22] The record is devoid of any evidence regarding the quantity of fish seized from the *Donna Sue*. Mr. Thompson presented no evidence to support a finding that any fish were seized from the *Donna Sue*, the only vessel he owned. The trial court thus lacked a factual basis to award the return of the fish from the *Donna Sue*. As noted earlier, to the extent the trial court relied on *res judicata* to reach that finding, it erred.

Legally, the jurisprudence has recognized that "a distinction has to be drawn between the seizure, forfeiture, and disposition of an illegal catch before conviction and the seizure, forfeiture and disposition of a boat or nets after conviction." *State v. Dubois*, 556 So.2d 1295, 1299 (La. App. 5th Cir. 1990) (Kliebert, J., concurring). This distinction stems from the special nature of ownership of wildlife in this state. Wildlife within the borders of this state is

20. The LDWF also points out that during the hearing on this matter, the trial court generally stated that there would not be any recovery as to the *Donna Sue* because it had been returned to Mr. Thompson. In particular, the LDWF refers to the trial court's statements that "Well, I don't see how the *'Donna Sue'* could be an issue at all"; and that "I think we've resolved the issue of the *'Donna Sue'*. It got back to Mr. Thompson and that ends that."

21. The trial court further ordered that it would, on a later date, receive evidence and argument regarding the monetary value of the fish seized from the *Donna Sue*. The trial court's judgment states that the hearing on that issue was set for January 7, 2016; the record, however, is silent regarding whether such a hearing was held.

22. In support of his writ of distrangas, Mr. Thompson filed the Affidavit in which he inventoried the equipment seized by vessel; however, he inventoried the fish collectively.

owned by the state and placed under the LDWF's exclusive control. La. R.S. 56:3 A;[23] *see also* La. C.C. art. 3413.[24] The LDWF is authorized to seize fish owned or possessed in violation of Title 56. La. R.S. 56:56. "Seizure" is defined to mean "the temporary taking of a thing. (*See* "Confiscation'.)." La. R.S. 56:8 (119). "Confiscation" is defined to mean "the exercise of a right under the police power wherein property is seized and held pending court order if the seized material is nonperishable, or disposed of without judicial intervention if perishable." La. R.S. 56:8 (30).[25]

■ Because of the perishable nature of the fish, the LDWF's agents, by statute, had the right to sell the fish without judicial approval. The LDWF acknowledges that its agents sold the fish. The fish thus were not held as evidence and were not in the LDWF's possession in 2000 when the district attorney's office filed a motion to destroy the articles held in evidence. The fish, thus, could not have been included within the scope of Mr. Thompson's property that this court ordered returned to him in *Thompson I*.

■ Moreover, contrary to the trial court's finding, we hold that Mr. Thompson does not have a right of action to claim the monetary equivalent value of the fish.[26]

**23.** The ownership of the fish, a form of wildlife, is addressed in La. R.S. 56:3 A, which provides:

> The ownership and title to all wild birds, and wild quadrupeds, fish, other aquatic life, the beds and bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds, and inlets bordering on or connecting with the Gulf of Mexico within the territory or jurisdiction of the state, including all oysters and other shellfish and parts thereof grown thereon, either naturally or cultivated, and all oysters in the shells after they are caught or taken therefrom, are and remain the property of the state, and shall be under the exclusive control of the Wildlife and Fisheries Commission except as provided in R.S. 56:4.

**24.** La. C.C. art. 3413 provides as follows: "[w]ild animals, birds, fish, and shellfish in a state of natural liberty either belong to the state in its capacity as a public person or are things without an owner. The taking of possession of such things is governed by particular laws and regulations."

**25.** The Legislature has mandated that the LDWF "adopt rules and regulations concerning disposition of all things seized and forfeited in the provisions of this Chapter." La. R.S. 56:60. The LDWF has adopted 76 LAC Pt I, § 305, which presently provides as follows regarding perishable evidence:

> i. All commercial fish of legal size and nongame quadrupeds, when seized by agents, officers or employees of the department, or other peace officers of the state shall be sold, whenever possible, by the officer making the seizure.
> ii. The officer shall obtain three bids from licensed dealers, if and when possible, and shall sell to the highest bidder.
> iii. The offense report of the violation in which the fish and nongame quadrupeds were seized shall reflect the names of the companies, the amounts of the bids and the names of the persons making the bids. The money recovered from such sale shall be delivered to the chief of the Enforcement Division and kept in escrow by the department until final disposition of the criminal charges. In the event the arresting and seizing officer cannot obtain a sale, the commercial fish and nongame quadrupeds will be donated in accordance with the provisions of Subparagraph B.1.a above, or held by the department until it is no longer needed for prosecution, at which time it shall be destroyed or disposed of as the secretary of the department shall determine.

**26.** The LDWF also contends the fish were contraband—illegally seized fish—and that Mr. Thompson abandoned any right to the value of the fish when he pled guilty, albeit to a lesser offense *See State v. Foster*, 08–2545, pp. 4–5 (La.App. 1 Cir: 6/12/09), 43 So.3d 200, 202 (noting that "Property seized in connection with a criminal proceeding must be returned to the owner once it is not needed as evidence, unless it is declared to be contra-

By statute, the most, if anything, Mr. Thompson has a right of action to claim is the net proceeds of the sale of the fish—the proceeds minus the expenses of the sale. La. R.S. 56:58 B. Any claim to such net proceeds, however, is barred, as the [23]LDWF contends,[27] by La. R.S. 56:64, which provides that "[t]he department shall have no liability whatever for the return of the proceeds from the sale of things seized after the lapse of two years and may then destroy all records pertaining to the sale." Given the fish were sold in 1996, the time period for seeking the return of the net proceeds from the LDWF has elapsed.[28] Accordingly, we hold that the trial court erred in finding Mr. Thompson was entitled to the return of the fish onboard the *Donna Sue* or the monetary equivalent.

### FRIVOLOUS APPEAL DAMAGES

██ In his answer to the appeal, Mr. Thompson requests an award of costs and attorneys' fees for frivolous appeal damages. Simply stated, "a successful appeal is

by definition non-frivolous." *Miralda*, 14–0888 at p. 33, 160 So.3d at 1019. We thus deny his request.

### DECREE

For the foregoing reasons, the trial court's judgment granting Mr. Thompson's Motion for Return of Property as to the equipment and fish on the[24]*Donna Sue* at the time of the seizure is reversed. In all other respects, the trial court's judgment is affirmed. Mr. Thompson's request in his answer to the appeal for an award of frivolous appeal damages is denied.

### AFFIRMED IN PART, REVERSED IN PART

---

band or forfeited under a specific statute" and citing La. Const., Art. I § 4 and La. R.S. 15:41). The LDWF also contends that it is statutorily immune from any liability under La. R.S. 56:65 A, which provides that "[n]either the department nor any enforcing officer, agent, or other employee of the department shall incur any liability whatsoever for any search, arrest, seizure, or other act done by him in the good faith performance of his duties under this Chapter." Given our finding that Mr. Thompson had no right of action to recover the fish on the *Donna Sue* because he failed to establish ownership coupled with our finding that any right of action he has to the proceeds of the fish is statutorily barred, we find it unnecessary to reach these other issues.

27. La. R.S. 56:58 B provides as follows:

Where the seizure is of perishables, other than oysters, menhaden and other herring-like fishes, and, because of the lack of readily available facilities for preservation, the

expense of preservation as related to the value of the thing, the condition of the thing at time of seizure, or other circumstances not within the control of the secretary, it is impracticable to hold the thing for use as evidence, the secretary shall dispose of the thing, according to rules and regulations adopted by the commission and in all cases, however, using his best efforts to preserve a sample of the thing for use as evidence. Disposition, in the discretion of the commission, may include public or private sale, gifts to schools or charitable institutions, destruction, or return of the thing to its natural habitat. If the penalty for the offense charged in connection with the seizure does not include forfeiture *or if there is no conviction*, proceeds from any sale under this Subsection, less expenses of the sale, shall be returned to the person from whom the thing was seized.

28. The Mandamus Suit, if it had been pursued, would have stated a timely claim to recover the proceeds from the sale of the fish.