| | | |
|---|---|---|
| STATE OF LOUISIANA, DIVISION OF ADMINISTRATION, OFFICE OF COMMUNITY DEVELOPMENT - DISASTER RECOVERY UNIT | * | NO. 2022-CA-0048 |
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| | * | |
| VERSUS | | STATE OF LOUISIANA |
| | * * * * * * * | |
| DEBORAH BAGERT A/K/A DEBORAH K BAGERT AND BRODERICK BAGERT SR A/K/A BRODERICK ARMAND BAGERT | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-01611, DIVISION "J"
Honorable D. Nicole Sheppard,
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Paula A. Brown, Judge Tiffany Gautier Chase)

Mary Catherine Cali
John C. Walsh
Caroline M. Tomeny
William J. Wilson
John C. Conine, Jr.
SHOWS, CALI & WALSH, LLP
P.O. Drawer 4425
Baton Rouge, LA 70821

      COUNSEL FOR PLAINTIFF/APPELLANT

Jeffrey P. Green
Cayce Peterson
JJC LAW LLC
3914 Canal Street
New Orleans, LA 70119

      COUNSEL FOR DEFENDANT/APPELLEE

                **AFFIRMED**
                **JULY 13, 2022**

This is a breach of contract case. Plaintiff/appellant the State of Louisiana, Division of Administration, Office of Community Development-Disaster Recovery Unit (hereinafter "the State") filed a petition against defendants/appellees, homeowners Broderick and Deborah Bagert (hereinafter "the Bagerts"), for breach of a Road Home Grant Agreement. The Bagerts responded with an exception of prescription. The trial court granted the exception of prescription and dismissed the State's case. The State now appeals the trial court's October 7, 2021 judgment granting the Bagerts' exception of prescription. After consideration of the record before this Court and the applicable law, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On August 29, 2005, the Bagerts resided at 6011 Chamberlain Drive ("the Property") when Hurricane Katrina devastated the New Orleans area. The hurricane damaged but did not destroy the Property. Following Hurricane Katrina, the State instituted a federally funded program (hereinafter "Road Home"), which offered financial assistance to homeowners in the affected area. The proceeds from Road Home were to be used by homeowners to repair and/or elevate homes.

The Bagerts entered into the Road Home program on April 3, 2008 and were awarded $132,000.00 in grant proceeds. In consideration for the grant, the Bagerts assented to the requirements of the Road Home Declaration of Covenants and the Road Home Grant Agreement (hereinafter "Grant Agreement"), which required them to repair and re-occupy the Property within three years of April 3, 2008.[1] The Grant Agreement also contained an acceleration clause which required

_____

[1] April 3, 2008 is defined in the Grant Agreement as the closing date.

1

immediate payment of the grant proceeds in the event of a sale of the Property. Section No. 1 of the "*Road Home* Covenants Running with the Land," a provision of the Grant Agreement, allowed the homeowner to assign the Road Home covenants to any future buyer.

The Bagerts sold the Property to Bernadette Bibolet Diaz (hereinafter "Ms. Diaz") on November 18, 2008 for One Hundred-Twenty Five Thousand Dollars ($125,000.00). The closing documents specifically provided that the buyer would assume the obligation of the Road Home covenants.[2]

On October 25, 2017, the Bagerts received a letter from the State advising them that they were in "default" of the Grant Agreement.[3] The letter provides, in pertinent part,

> "[w]e noticed that the damaged residence was sold within the 3-year compliance period and the Road Home Covenants were transferred to the new owner, however, you still used the Grant Funds for a purpose other than re-occupying the property for which you received the Road Home Grant…The purpose of this letter is to collect the Road Home Grant Funds set forth above." [4]

---

[2] In consideration for the buyer's assumption of the covenants, the Property was sold for $132,000.00 less than the value of the home.

[3] The State sent several letters to the Bagerts which included letters dated August 11, 2011, May 18, 2011 and August 26, 2013, requesting documentation for proof of compliance of the Grant Agreement.

[4] The State's October 25, 2017 letter also pertinently provides:

"If you refer to the Road Home Declaration of Covenants Running with the Land document, page 3, Agreement No. 8 titled "Due on Sale or Transfer: Acceleration", it states "At any time in the case of sale, transfer, or disposition of all or any portion thereof, by voluntary transfer in which the conditions set further in Section 1 are not complied with…the entire amount of the Grant shall become immediately due and payable, without notice or demand, by the Defaulting Owner to OCD." The Defaulting Owner would be you since you are the Owners that Defaulted on the Road Home Grant Agreement(s). While *you* may have a claim or action against the Assignee based on their failure to demonstrate compliance with the Road Home covenants assumed by them, it is the position of our client that your responsibility to the program has not been released."

The following year, on August 9, 2018, another letter was sent to the Bagerts. The letter requested further information on the grant proceeds and provided,

> "[P]lease be advised, if we do not receive any documentation warranting further investigation and justifying a continued hold on the matter within thirty (30) days of the date of this letter, we will remove the file from the "HOLD" status and move the matter forward in whatever manner our client OCD-DRU deems appropriate."

The State took no further action.

On February 22, 2021, the State filed a petition for breach of contract against the Bagerts. The petition alleges that the Bagerts failed to refund the grant proceeds or comply with the Grant Agreement requirement to re-occupy the Property as their primary residence within three years of April 3, 2008.

In response to the State's petition, the Bagerts filed an answer and third-party demand on May 7, 2021, alleging that they sold the Property on November 18, 2008 to Ms. Diaz. Prescription was affirmatively plead in the Bagerts' answer. In support of their affirmative defense and third-party demand, the Bagerts attached the Cash Sale agreement to the third-party demand as an exhibit. In the Bagerts' memorandum in support of prescription, they argued that the State's claim is governed by a ten-year prescriptive period that began to run on November 18, 2008, the date the Property was sold to Ms. Diaz. The Bagerts maintained that the petition was untimely as the State filed its petition more than twelve years after that date.

In its opposition to the exception of prescription, the State asserted that since the Bagerts had three years from April 3, 2008 to fulfill their obligation to commence occupying the Property as their primary residence, they could not be in breach of the Grant Agreement until the expiration of the three-year compliance period on April 3, 2011. Thus, when the Bagerts failed to occupy the property as

3

their primary residence by April 3, 2011, prescription commenced to run on the State's claims, and the ten-year prescriptive period expired on April 3, 2021. As its petition was filed on February 22, 2021, the State avers it was timely.

After a hearing, and by written judgment dated October 7, 2021, the trial court granted the exception of prescription. This appeal followed.

## STANDARD OF REVIEW

The standard of review of a trial court's ruling on a peremptory exception of prescription turns on whether evidence was introduced at the hearing on the exception. *Wells Fargo Fin. Louisiana, Inc. v. Galloway,* 2017-0413, p. 7-8 (La.App. 4 Cir. 11/15/17), 231 So.3d 793, 800 (citing *State v. Thompson,* 2016-0409, p. 18 (La.App. 4 Cir. 11/23/16), 204 So.3d 1019, 1031). If, as in this case, no evidence was introduced, review of the judgment is simply to determine whether the decision of the trial court was legally correct, and a *de novo* standard of review applies. *Id.*

## DISCUSSION

In its sole assignment of error, the State asserts that the trial court erred in granting the exception of prescription. It avers that prescription began to toll on April 3, 2011, when the three-year compliance period for the Bagerts to re-occupy the Property expired. Therefore, the State contends that it had until April 3, 2021 to bring a claim against the Bagerts for breach of contract; and its petition, filed February 22, 2021, is timely.

The State and the Bagerts agree that this is an action for breach of contract. "In determining the applicable prescriptive period, we are guided by the well-settled principle that '[t]he character of an action disclosed in the pleadings determines the prescriptive period applicable to that action.'" *Parry v.*

4

*Administrators of Tulane Educ. Fund,* 2002-0382, p. 7 (La.App. 4 Cir. 9/4/02), 828 So.2d 30, 35 (quoting *Starns v. Emmons*, 538 So.2d 275, 277 (La. 1989)). In contract actions, prescription commences to run from the date of the breach. *See Ohle v. Uhalt,* 2016-0569, p. 14 (La.App. 4 Cir. 2/1/17), 213 So.3d. 1, 11. A contract may be actively breached when a party does something inconsistent with the obligation which was proposed. *Shell Oil Co. v. Hogan*, 81 So.2d 761, 763 (La. 5/23/55).

## Burden of Proof

"The defendant bears the burden of proving prescription, unless the allegations of the petition reflect that the claim is prescribed, in which event the burden of proof falls upon the plaintiff to show interruption, renunciation, or suspension." *Russ v. City of New Orleans,* 2019-0579, p. 2 (La.App. 4 Cir. 8/28/19), 278 So.3d 1006, 1008 (citing *Felix v. Safeway Ins. Co.,* 2015-0701, p. 4 (La.App. 4 Cir. 12/16/15), 183 So.2d 627, 630). As a threshold matter, our *de novo* review reveals that the State's petition is not prescribed on its face. The petition sets forth that the Bagerts received $132,000.00 from Road Home in connection with the Property on the grant closing date of April 3, 2008; and agreed by executing the Grant Agreement to fulfill certain requirements. The petition references a specific requirement, found in Paragraph 6 of the Grant Agreement, which provides:

> Homeowner(s) agree(s) to commence occupying the Property as his/her primary residence within three (3) years after the Closing Date. This provision is a material consideration without which the Homeowner(s) would have received a lesser amount under the Road Home Program. Homeowner(s) will be required to repay the Grant in the event of a violation of this Section 6.

The petition alleges that the Bagerts had until April 3, 2011 to satisfy the Grant Agreement and to re-occupy the Property. It further states that they breached the Grant Agreement by failing to do so by that date. Therefore, according to the petition, the applicable ten-year prescriptive period commenced on April 3, 2011. As the petition was filed on February 22, 2021, less than ten years after April 3, 2011, it is not prescribed on its face. Thus, the burden of proof shifts to the Bagerts to prove that the State's petition is prescribed.

**Date of Breach**

In the Bagerts' exception of prescription they asserted that the breach occurred when they sold the Property to Ms. Diaz on November 18, 2008.[5] In analyzing whether the trial court properly granted their exception of prescription, we must first determine the date of the alleged breach.

The pleadings include the Cash Sale agreement attached as an exhibit to the Bagerts' answer.[6] The documentation establishes that the Bagerts "sold and delivered" the Property to Ms. Diaz on November 18, 2008 for the price of One

---

[5] The Bagerts submit, solely for the purposes of their exception of prescription, that the Act of Sale required that the buyer assume their responsibilities under the Grant Agreement. They point out that the Grant Agreement allows for an assumption of the Road Home Covenants.

[6] The State and the Bagerts both attached pertinent documents as exhibits to their pleadings. The Act of Sale is attached to the Bagerts' third-party demand. Pleadings in civil actions consist of petitions, exceptions, written motions, and answers. La. C.C.P. art. 852. A copy of any written instrument that is an exhibit to a pleading is a part thereof. La. C.C.P. art. 853. Pleadings are a part of the record and are considered by a court pertinent to an exception absent their formal introduction into evidence. *See Med. Review Panel for Bush*, 2021-00954 (La. 5/13/22), --- So.3d. ----, 2022 WL 1511275, *5 (where a document containing the date prescription possibly began to run was attached to an opposition to the exception, the court could not consider its allegations as it could have if the document had been attached to a standard petition); *Strickland v. S. Nat. Ins. Co.,* 27 So.2d 733, 734 (La.App. 2 Cir. 10/31/46) ("it is unquestionably true that documents and exhibits filed with any pleading are to be considered in connection with the allegations of the pleading itself and must be accorded full consideration in ruling on any plea or exception interposed to such pleadings…"); *Hunt Petroleum Corp. v. Texaco, Inc.,* 2004-0729, p. 4 (La.App. 4 Cir. 12/1/04), 891 So.2d 36, 39 ("[u]nder La. C.C.P. art. 853, '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'").

Hundred Twenty-Five Thousand ($125,000.00) dollars cash.[7]  The record contains no evidence to contradict the date of the sale and delivery of the Property.

"In essence, an active breach [of a contract] is characterized by some act, a doing of the obligor which is indicative that he no longer can or that he will not perform his obligation."  Litvinoff, Civil Law Treatise, Obligation, Book II, § 233, p. 439.  Therefore, when the conduct of a party to a contract makes it impossible for the contract's object to be completed, the conduct is an active breach of the contract.  *See Bergeron v. Bertrand,* 514 So.2d 622, 624 (La.App. 4 Cir. 10/7/87); *Meunier v. Liang*, 521 So.2d 475, 477 (La.App. 4 Cir. 2/10/88).

In conducting a *de novo* review, we consider the entire record before this Court.  Specifically, the record contains certain documents and recitals that aid this Court in determining the applicable date on which prescription began to run. The Cash Sale attached to the answer and third party demand establishes that the Bagerts' sold the Property to Ms. Diaz on November 18, 2008, thus making it impossible for them to thereafter renovate and re-occupy the Property.  The State sent several letters to the Bagerts between 2011 and 2013 acknowledging that a potential breach of the Grant Agreement had occurred as the Bagerts had not provided documentation that the Property had been repaired. Furthermore, the October 25, 2017 letter from the State further suggests that the State was aware that the Property was sold and the Road Home covenants assigned to another person. Although the specific date of the sale in not contained in the letter, the letter nonetheless acknowledges that the Property was sold prior to the three-year compliance period. Considering the pleadings, we find that the Bagerts' breach occurred on November 18, 2008, that date the property was sold to Ms. Diaz, and

_____

[7] The sale price was $132,000.00 less than the value of the home.

prescription began to run on that date. As the State filed the petition for breach of contract on February 22, 2021, more than ten years after the Bagerts' breach, we find the petition is prescribed.

## DECREE

We affirm the October 7, 2021 judgment of the trial court granting the peremptory exception of prescription filed by the Bagerts and dismissing the State's suit with prejudice.

**AFFIRMED**