MEDICAL REVIEW PANEL                          \*                      NO. 2020-CA-0468
FOR THE CLAIM OF
RICHARD BUSH, DECEASED,        \*
ET AL PCF NO. 2018-01209                      COURT OF APPEAL

                                           \*                      FOURTH CIRCUIT

                                         \*                      STATE OF LOUISIANA

                            \* \* \* \* \* \* \*

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 19-0107, DIVISION "A"
Honorable Robert A. Buckley, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*
(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge
Paula A. Brown)

**BELSOME, J., CONCURS IN THE RESULT WITH REASONS**

Julie U. Quinn
QUINN LAW, APLC
855 Baronne Street
New Orleans, LA 70113

      COUNSEL FOR PLAINTIFF/APPELLANT

Paul A. Tabary, III
Elizabeth R. Borne
TABARY AND BORNE, LLC
Three Courthouse Square
Chalmette, LA 70043

Kyle Choate
GACHASSIN LAW FIRM
400 E. Kaliste Saloom Rd.
Suite 6100
Lafayette, LA 70509

      COUNSEL FOR DEFENDANTS/APPELLEES

**REVERSED IN PART;
AFFIRMED IN PART;
REMANDED
JUNE 2, 2021**

This matter involves a medical malpractice claim for wrongful death and survival actions. Plaintiffs/Appellants, Patricia Bush, Madalyn Bush, and Ashley Bush, individually and on behalf of the decedent, Richard Bush, (collectively, the "Bush Family"), appeal the district court's judgment which sustained, in part, Defendants'/Appellees', Dr. Miguel Aguilera and St. Bernard Parish Hospital Foundation, Inc. d/b/a Ochsner Health System, Ochsner Medical Center ("SBPHF")(collectively "Defendants"), peremptory exception of prescription on their wrongful death action. In turn, SBPHF filed an answer to the appeal in the district court, seeking reversal of the district court's judgment, which denied the exception of prescription on the Bush Family's survival actions.[1] For the reasons

---

[1] La. C.C.P. art. 2133(A) provides in relevant part:

> An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later.

In *Succession of Poole*, 15-1317, p. 11 (La. App. 1 Cir. 10/28/16), 213 So.3d 18, 25, the First Circuit noted La. C.C.P. art. 2133 does not designate which court the answer to an appeal must

1

that follow, we reverse the district court's judgment in part, affirm it in part, and remand the matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 21, 2017, Mr. Bush presented to SBPHF, located in Chalmette, Louisiana, for depression and suicidal ideations. After being denied admittance to the hospital, Mr. Bush went into the hospital's bathroom and attempted suicide by hanging. Mr. Bush was revived and later transported to University Hospital in New Orleans. On November 30, 2017, Mr. Bush subsequently died from the injuries sustained from his attempted suicide.

*The first complaint*

On November 27, 2018, Ms. Bush, on behalf of herself, her daughters, and her deceased husband, filed a formal complaint, *pro se*, with the Patient Compensation Fund - Division of Administration Medical Review Panel ("PCF") to convene a medical review panel, pursuant to La. R.S. 40:1231.1 *et seq.*[2] Dr. Aguilera and SBPHF were named as defendants. In the complaint, the Bush Family alleged that Defendants committed malpractice when they failed to admit and treat Mr. Bush when he presented to the hospital on November 21, 2017. Specifically, the Bush Family contended that "[SBPHF] records reflect that his treatment providers KNEW that Mr. Bush had a history of presenting to the emergency room with complaints of depression and suicidal thoughts and/or ideation on prior occasions, and on each prior occasion, he had received

---

be filed and the only requirement was that it be filed no later than fifteen days after the return date or lodging of the record whichever is later. As SBPHF's answer was timely filed, it is properly before this Court.

[2] The Medical Malpractice Act is codified in La. R.S. 40:1231.1 *et seq.*

2

appropriate treatment that prevented him from acting on any suicidal thoughts and/or ideations." In addition, the Bush Family alleged that "Dr. Aguilera, St. Bernard Parish Hospital and/or Ochsner Clinic Foundation violated St. Bernard Parish Hospital Policy by failing to admit someone with suicidal tendencies who advised hospital staff and Dr. Aguilera that he was going to commit suicide." The Bush Family alleged the dates of the malpractice occurred on November 21, 2017, when Mr. Bush presented to SBPHF, until November 30, 2017, when Mr. Bush ultimately died. Ms. Bush furnished a filing fee of $100.00 with the complaint.

On December 4, 2018, the PCF notified Ms. Bush, via certified letter, acknowledging receipt of her request for a medical review panel and $100.00 money order. In addition, the PCF stated that the filing fee was $100.00 per qualified defendant, and the $100.00 remitted by Ms. Bush would be applied once the balance of $100.00, for the second named defendant, was received. The PCF further informed Ms. Bush that, under La. R.S. 40:1231.8 (1)(c) and (d)[3], she had forty-five (45) days to either remit the remaining balance of $100.00, submit a physician's affidavit or submit an in forma pauperis ruling, and pursuant to section (1)(e) of La. R.S. 40:1231.8, "[f]ailure to comply shall render the request and without effect as to all named healthcare providers including any previously qualified providers."

On January 22, 2019, the PCF sent Ms. Bush a "2ND NOTICE", which, again, requested the outstanding fee and explained the consequences of her

---

[3] La. R.S. 40:1231.8 sets forth the procedure to formally request a medical review panel.

3

noncompliance. Also on January 22, 2019, SBPHF filed a petition to institute discovery in the Thirty-Fourth Judicial District Court in St. Bernard Parish.[4]

On March 13, 2019, the PCF, in a certified letter to Ms. Bush, advised her that due to her failure to remit the remaining filing fee of $100.00, a physician's affidavit, or an in forma pauperis within the 45-day deadline, her case was considered invalid and without effect and a refund in the amount of $100.00 would be issued.

*The second complaint*

On May 28, 2019, the Bush Family, through counsel, filed their second complaint with the PCF. This complaint contained the exact allegations against Dr. Aguilera and SBPHF as the initial complaint, and, again, requested a medical review panel be convened. The PCF, on June 13, 2019, forwarded correspondence to counsel for the Bush Family, acknowledging receipt of the Bush Family's May 28, 2019 request for a medical review panel and receipt of their $200.00 check on June 5, 2019.

On October 17, 2019, Ms. Bush filed a supplemental complaint to the medical review panel, alleging in pertinent part:

> [I]n or around **October of 2018** that the hospital maintained certain policies and procedures requiring **that a patient be admitted if he threatened suicide**. **This was the first time Ms. Bush had *any* facts or indication that defendants' had committed malpractice** and that, had they followed hospital policy and procedure, his suicide could have been prevented.

---

[4] Any party may institute a petition to institute discovery after a request for a medical review panel is filed. In accordance with La. R.S. 40:1237.2(D)(4), "[u]pon request of any party, or upon request of any two panel members, the clerk of any district court shall issue subpoenas and subpoenas duces tecum in aid of the taking of depositions and the production of documentary evidence for inspection or copying or both." In this case, the petition to institute discovery was filed by SBPHF and the matter was captioned "In Re: Medical Review Panel for the Claim of Richard Bush, Deceased, ET AL PCF No. 2018-01209."

4

Prior to this time, she did not have any reason to believe that his suicide was the result of any breach of the standard of care by the defendants named herein.

*The exception of prescription*

On August 30, 2019, SBPHF filed a peremptory exception of prescription in the district court, asserting the Bush Family's request for a medical review panel had prescribed. SBPHF alleged that the Bush Family's first complaint was invalid, and without effect as to all defendants, and prescription was never suspended, because the Bush Family failed to comply with the statutory requirements of La. R.S. 40:1231.8(A)(1)(c). As to the second complaint, SBPHF argued it had prescribed on its face. SBPHF asserted that the allegations of malpractice dates were still November 21, 2017 with a date of death on November 30, 2017, the Bush Family filed their second complaint in May of 2019, after the one year prescriptive period, and the prescription period had not been suspended with the filing for the first complaint which was invalid. Dr. Aguilera filed a peremptory exception of prescription on September 23, 2019, adopting the law and arguments of SBPHF.

In support of the exception of prescription, Defendants attached to the exception both complaints, and the letters from the PCF.

The Bush family did not challenge that the first complaint was invalid. However, as to the second complaint, the Bush Family filed an opposition to the exception of prescription on October 10, 2019, arguing that the doctrine of *contra non valentem* applied. The Bush Family maintained they did not become aware of SBPHF's internal policies and procedures that required admittance of a patient who presented with suicidal ideations until October 2018, after they received Mr. Bush's complete medical records. The Bush Family urged since they did not have

5

any actual or constructive knowledge of Defendant's malpractice until October 2018, eleven months after Mr. Bush's death, the one year prescriptive period did not begin to run until October 2018. The Bush Family argued, because they filed their second complaint on May 28, 2019, the complaint was filed within the one year prescriptive period. In support of its opposition, the Bush Family offered into evidence an affidavit signed by Ms. Bush on October 17, 2019, which provided in pertinent part:

> 1. I was married to Richard Bush at the time of his death, and together we had two (2) children, Madelyn Bush and Ashley Bush;
>
> * * *
>
> 5. On the morning of November 18, 2017, I was advised by Richard's mother that Richard had attempted to commit suicide the night before;
>
> 6. Thereafter, at University Medical Center, Richard was unconscious and on life support, completely unable to communicate until his death on November 30, 2018;
>
> 7. After Richard's death, I began obtaining and reviewing his medical records. There was nothing in these records to reflect that any breach of the standard of care had occurred on the night that he attempted suicide.
>
> 8. In October, 2018, I learned for the first time that the hospital had certain policies and procedures requiring that a patient be admitted if he threatened suicide. This was the first time I had facts which led me to believe that my husband's suicide was the result of malpractice by defendants;
>
> 9. Prior to that time, I did not have any reason to believe that his suicide was the result of any breach of the standard of care by Dr. Miguel Aguilera or St. Bernard Parish Hospital.

In addition, the Bush Family offered as evidence their October 17, 2019, supplemental complaint filed with the PCF, discussed *supra*.

Following, Defendants each filed reply memoranda.

A hearing on the exception was held on October 18, 2019, and the district court took the matter under advisement. On November 14, 2019, the district court issued a judgment that granted Defendants' exception of prescription as to the wrongful death action, but denied the exception as to the survival actions, pending further discovery on the Bush Family's alleged delay discovery of malpractice.[5]

*Motion for New Trial*

On October 28, 2019, the Bush Family filed a motion for new trial challenging the district court's judgment, which granted the exception of prescription as to their wrongful death claim, arguing that because the district court found that *contra non valentem* interrupted the prescriptive period on the survival actions, the same analysis should be applied to the wrongful death action. A hearing on the motion for new trial was held on December 13, 2019. On December 30, 2019, the district court rendered judgment, denying the Bush Family's motion for new trial. In the judgment, the district court designated the judgment granting Defendants' peremptory exception of prescription on the Bush Family's wrongful death claim as a final judgment. The district court issued reasons for judgment, addressing the exception of prescription.[6] It explained its reasons for denying the first complaint, writing:

---

[5] A copy of the transcript of the district court's October 18, 2019 hearing is not contained in the appellate record.

[6] It is a "'well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.'" *Wooley v. Lucksinger,* 09-0571, 09-0584, 09-0585, 09-0586, p. 77 (La. 4/1/11), 61 So.3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 07-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671). However, a court of appeal may review the trial court's reasons for judgment to "gain insight" into the trial court's judgment. *Id.*, 09-0571, 09-0584, 09-0585, 09-0586, p. 78, 61 So.3d at 572; *See also, Bruno v. CDC Auto Transp., Inc.,* 19-1065 (La. App. 4 Cir. 6/3/20), 302 So.3d 8, 13, *writ denied,* 20-00836 (La. 10/14/20), 302 So.3d 1118.

At the original prescription hearing, the Court ruled from the bench without written reasons and none were requested. The Court sets forth that the granting of the exception of prescription as to the wrongful death action was proper due to the facts of this case. The first medical review panel was filed timely as to survival and wrongful death actions. However, it was properly dismissed due to, plaintiff's failure to properly pay all required filing fees. Said dismissal legally results in no interruption or suspension of any of the prescription periods.

The district court, as to the second complaint, wrote in pertinent part:

A second medical review panel was filed more than one year from the date of alleged malpractice action and death. The Court ruled that contra non valentem applied as to the survival action due to discovery of filing within one year of discovery of the alleged act of negligence for malpractice claim. However, the Court found that contra non valentem did not interrupt the prescriptive period of one year from date of death. In this instance, because of the immediate awareness of the death, the reasonableness of delaying inquiry as to the cause was not proven to the Court's satisfaction. Plaintiff established the application of contra non valentem to the survival action but not to the wrongful death action.

On March 11, 2020, the Bush Family filed a notice for devolutive appeal, which was granted by the district court on May 20, 2020. On April 30, 2020, before the record was lodged in this Court, SBPHF filed an answer to the Bush Family's appeal in the district court. This timely appeal followed.

*Jurisdiction*

Before we consider the merits of the instant appeal, we must first address the jurisdictional issue raised by SBPHF in its' brief to this Court. SBPHF asserts that the Bush Family erroneously filed a devolutive appeal from the district court's December 30, 2019 judgment, denying the Bush Family's motion for new trial. SBPHF, citing *Miller v. Chicago Ins. Co.,* 320 So.2d 134, 136 (La. 1975), argues that the denial of a motion for new trial is not appealable; but rather, it is reviewed under the appellate court's supervisory jurisdiction. SBPHF urges because the Bush Family filed a devolutive appeal—more than thirty days after the judgment

8

denying the motion for new trial—it could not be converted to a timely filed writ application, which must be filed within thirty days of the judgment. SBPHF contends because the matter was improperly filed as an appeal, and was untimely filed to be converted to a supervisory writ, the matter should be dismissed. We disagree.

"Generally, a judgment denying a motion for new trial is an interlocutory, non-appealable judgment." *Alexander v. Centanni*, 20-0321, 2021 WL 343404, at *3 (La. App. 4 Cir. 1/27/21)(citing *Barham, Warner & Bellamy, L.L.C. v. Strategic All. Partners, L.L.C.,* 09-1528, p. 4 (La. App. 4 Cir. 5/26/10), 40 So.3d 1149, 1151).[7] As a rule, interlocutory judgments are appealable only when expressly provided by law. La. C.C.P. art. 2083(C). Notwithstanding, this Court, in *Clotworthy v. Scaglione*, 11-1733, p. 3 (La. App. 4 Cir. 5/23/12), 95 So.3d 518, 520 (citing *Smith v. Hartford Acc. & Indem. Co.,* 254 La. 341, 223 So.2d 826, 828-29 (La. 1969)), opined that the reviewing court "consider[s] an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits of the case as well when . . . it is clear from the appellant's brief that [they] intended to appeal the merits of the case."

In the case *sub judice*, review of the record and appellate briefs clearly demonstrate that the Bush Family intended to appeal the merits of the underlying exception of prescription. In fact, as noted *supra*, the district court, in its judgment denying the motion for new trial, designated the judgment granting the exception of prescription and dismissing plaintiff's wrongful death claim, as a final

---

[7] *See also, Babineaux v. Univ. Med. Ctr.*, 15-0292, p. 4 (La. App. 3 Cir. 11/4/15), 177 So.3d 1120, 1123 (quoting *Shavers v. Shavers*, 350 So.2d 912 (La. App. 3 Cir. 1977)("'A judgment denying a motion for new trial is an interlocutory order, not a final appealable judgment.'").

judgment.[8]  Thus, we conclude that this Court has jurisdiction to address the merits of the appeal, and we limit our review to the issue of prescription.

## DISCUSSION

The Bush Family asserts a number of assigned errors, which we summarized as follows:[9]

> The district court erred in finding that the doctrine of *contra non valentem* was applicable to a medical malpractice claim for survival actions, but not for a wrongful death action that was filed within one (1) year of the date of discovering the alleged act, omission, or neglect that encompasses the medical malpractice, but over a year after the date of death.

In its answer filed in the district court, SBPHF asserts that the district court erred in denying its exception of prescription on the Bush Family's survival action.

**Applicable law/standard of review**

*Prescription*

The prescriptive period governing a wrongful death claim is one year from the date of death.  La. C.C. art. 2315.2.  The prescriptive period governing medical malpractice claims, including survival actions but excluding wrongful death actions, is codified in La. R.S. 9:5628(A).  This statute provides in pertinent part:

> No action for damages for injury or death against any physician . . . hospital or nursing home duly licensed under the laws of this state . . . whether based upon tort, or breach of contract, or otherwise, arising

---

[8] La. C.C.P. art. 1915 (B)(1) provides:

> When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

[9]  The Bush Family also assigns as an error that the district court erred in denying the motion for new trial.  However, as discussed *supra*, the appeal is limited to review the district court's granting of the exception of prescription concerning the wrongful death claim and the denial of the exception of prescription on the survival actions.

10

out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

The Louisiana Supreme Court, in interpreting La. R.S. 9:5628, explained:

La. [R.S.] 9:5628 is a tripartite prescription provision:

First, a one-year prescription period (which parallels the general tort period) is the general rule, which applies to all types of medical malpractice actions. Under this general rule, such actions prescribe one year from the date of the alleged act, omission or neglect. This rule applies when the damages are immediately apparent.

Second, in cases involving damages that are not immediately apparent, a discovery exception to the general rule is codified. The discovery exception embodied in Section 5628 is a codification of the fourth category of *contra non valentem* for cases in which the cause of action is not immediately knowable. Under this discovery rule, such actions prescribe one year from the date of discovery of the alleged act, omission or neglect.

Third, an overall limitation is placed on cases otherwise falling within the discovery rule. That overall limitation is the underscored portion of Section 5628, which provides that "in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect." La. [R.S.] 9:5628 (emphasis supplied).

\*    \*    \*

A straightforward reading of this statute clearly demonstrates the statute sets forth two prescriptive limits within which to bring a medical malpractice action, namely one year from the date of the alleged act or one year from the date of discovery with a three-year limitation from the date of the alleged act, omission or neglect to bring such claims. [internal citations omitted].

*Carter v. Haygood*, 04-0646, pp. 9-10 (La. 1/19/05), 892 So.2d 1261, 1267-68

(citations omitted).

"The peremptory exception of prescription is a 'procedural device by which a defendant may obtain dismissal of the action because it is time-barred.'" *Felix v.*

11

*Safeway Ins. Co.*, 15-0701, p. 4 (La. App. 4 Cir. 12/16/15), 183 So.3d 627, 630 (internal quotations and citation omitted). "Ordinarily, the mover bears the burden of proof at the trial on the exception of prescription." *Fisher v. Blood Center*, 19-0846, p. 5, (La. App. 4 Cir. 2/12/20), 292 So.3d 985, 988 (citation omitted). "If, however, the petition on its face reveals that prescription has run, the burden of proof shifts to the plaintiff to show his action has not prescribed." *Id.* (citations omitted).

Generally, a peremptory exception raises an exclusively legal question. *Fisher*, 19-0846, p. 3, 292 So.3d at 987 (citation omitted). However, evidence may be introduced in the district court to support or oppose a peremptory exception of prescription. *Id.* *See* La. C.C.P. art. 931 (which provides that "evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition."). The standard of review of a district court's ruling on a peremptory exception of prescription hinges upon whether evidence is introduced. *Id.* (citing *State v. Thompson*, 16-0409, p. 18 (La. App. 4 Cir. 11/23/16), 204 So.3d 1019, 1031 (citing *Miralda v. Gonzalez*, 14-0888, pp. 17-18 (La. App. 4 Cir. 2/4/15), 160 So.3d 998, 1009)). When evidence is introduced at the hearing on an exception of prescription, the trial court's findings of fact are subject to the manifest error standard of review. *Id.* (citing *In re Medical Review Panel of Hurst*, 16-0934, p. 4 (La. App. 4 Cir. 5/3/17), 220 So.3d 121, 125-126). Under the manifest error standard of review, well-settled jurisprudence provides that if the fact finder's ruling is reasonable, in light of a review of the record in its entirety, the court of appeal may not reverse. *Id.*, 19-0846, p. 3, 292 So.3d at 987-988 (citing *Stobart v. State, Dep't of Trans. And Dev.*, 617 So.2d 880, 882-883 (La. 1993)). "When no evidence is introduced, the

exception of prescription is decided on the facts pled in the petition, which are accepted as true, and 'the judgment is reviewed simply to determine whether the trial court's decision was legally correct.'" *Id*., 19-0846, pp. 3-4, 292 So.3d at 988 (quoting *639 Julia Street v. City of New Orleans*, 17-0940, p. 4 (La. App. 4 Cir. 5/2/18), 246 So.3d 847, 849 (citation omitted)). "[T]he standard controlling our review of a peremptory exception of prescription also requires that we strictly construe the statutes against prescription and in favor of the claim that is said to be extinguished." *Id*. (quoting *639 Julia Street*, 17-0940, pp. 4-5, 246 So.3d at 850) (citing *Felix v. Safeway Ins. Co.*, 2015-0701, p. 6 (La. App. 4 Cir. 12/16/15), 183 So.3d 627, 631)).

In this case, evidence was introduced at the hearing on the peremptory exception of prescription; thus, the manifest error-clearly wrong standard is applicable.

*Contra Non Valentem*

"[*C*]*ontra non valentem non currit praescriptio* [("*contra non valentem*")], which means that prescription does not run against a person who could not bring his suit, is a Louisiana jurisprudential doctrine under which prescription may be suspended." *Carter*, 04-0646, p. 11, 892 So.2d at 1268 (internal citations omitted). This jurisprudential exception was adopted to "soften the occasional harshness of prescriptive statutes." *Id*. The Supreme Court has recognized four factual situations in which *contra non valentem* may prevent the running of prescription:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or (4) where the cause of action is neither known nor

13

reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

*Id.*, 04-0646, pp. 11-12, 892 So.2d at 1268. The fourth category of *contra non valentem*, is applicable to this case; it is also known as the discovery rule. The discovery rule prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff. In discussing reasonableness, the Supreme Court, in *Campo v. Correa*, 01-2707, pp. 11-12 (La. 6/21/02), 828 So.2d 502, 510 explained that "[p]rescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." "[A] plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice." *Id.*, 01-2707, p. 12, 828 So.2d at 511. In medical malpractice cases, "[e]ven if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was *reasonable* for the plaintiff not to recognize that the condition might be treatment related." *Id.* (citation omitted). As such, "[t]he ultimate issue is the reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct." *Id*

With these precepts in mind, we turn to the Bush Family's assigned error.

**Analysis**

*The Bush Family's appeal*

On appeal, the Bush Family asserts the district court erred in granting the exception of prescription as to the wrongful death action, and finding that the

14

doctrine of *contra non valentem* was applicable to their medical malpractice claim for survival actions, but not their medical malpractice claim for wrongful death.

It has been long held that the prescriptive period in a wrongful death case begins to run at the time of death because that is the date the claimants were injured. La. C.C. art. 2315.2; *Taylor v. Giddens*, 618 So.2d 834, 836 (La. 1993). In *Taylor*, the Louisiana Supreme Court examined the prescriptive period for wrongful death cases, writing:

> [La. R.S.] 9:5628 provides the prescriptive period for survival actions but does not provide the prescriptive period for wrongful death actions. . . . . The commencement and running of the prescriptive period for the wrongful death action is controlled by the one year liberative period applicable to delictual actions, [La. C.C.] art. 3492.

*Id*. Delictual actions have a prescriptive period of one year which starts to run from the date the injury or damages is sustained. La. C.C. art. 3492. The *Taylor* Court explained that a wrongful death action and a survival action are separate and distinct causes of actions, but arise from a common tort. *Id*. at 840. The court continued explaining that a wrongful death action, which arises upon death of the victim, compensates the beneficiaries for their own pain and suffering sustained as a result of the decedent's death. *Id.* The court concluded that La. R.S. 9:5268(A)—the prescriptive period provided for in medical malpractice actions— did not control wrongful death claims arising out of acts of medical malpractice. *Id.* at 841.

Following *Taylor*, Louisiana appellate courts observed that in a medical malpractice case in which the damage resulting from acts of malpractice is death, the alleged malpractice is readily apparent; thus, prescription begins to run on the date of the victim's death, since that is the date the claimants are injured. Although the *Taylor* court did not explicitly state *contra non valentem* was inapplicable to

15

wrongful death actions, Louisiana Courts have strictly construed the wrongful death prescriptive period, including in medical malpractice cases, to one year from the date of death.[10] However, in recent appellate court decisions the legal precedent pronounced in *Taylor* and appellate court decisions following *Taylor* have evolved. Appellate courts are now conducting a fact-intensive reasonableness examination when queried to determine whether the doctrine of *contra non valentem* tolls prescription in medical malpractice claims for wrongful death actions.

In *Brooks v. Meaux*, 18-0980 (La. App. 3 Cir. 6/12/19), 275 So.3d 41, *writ denied*, 19-01135 (La. 10/8/19) 280 So.3d 590, the Third Circuit reversed the district court's judgment that sustained the exception of prescription arising out of a medical malpractice claim for the wrongful death of the plaintiff's wife, who died from a rare disorder during pregnancy. The plaintiff maintained that he had no knowledge his wife's cause of death was treatment related until he received his wife's autopsy report and an article outlining the symptoms of his wife's condition, two months after her death. The plaintiff argued that prescription did not begin until the date of discovery of the cause of action, not the date of death as alleged by the defendant. The appellate court noted that in support of his argument, the plaintiff introduced his deposition testimony, wherein he detailed the timeline of events. The Third Circuit explained the reasonableness inquiry when late discovery is alleged, writing in pertinent part:

> While Dr. Meaux points to the date of death and the date of the death certificate as evidence of constructive knowledge, "a plaintiff's mere apprehension that something may be wrong is insufficient to

---

[10] *See Ford v. Rapides Healthcare System, L.L.C.*, 06-1539 (La. App. 3 Cir. 5/2/07), 957 So.2d 258; *Carter v. Ochsner Clinic Found.*, 07-0889 (La. App. 5 Cir. 3/11/08), 978 So. 2d 562, 565; *Dowl, Jr., v. Redi Care Home Health Ass'n*, 09-1300 (La. App. 4 Cir. 2/3/10), 31 So.3d. 596.

commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence *that his problem may have been caused by acts of malpractice.*" [*Campo v. Correa*, 01-2707, p. 9 (La. 6/21/02) 828 So.2d 502] at 511 (emphasis added). Further, "[e]ven if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was *reasonable* for the plaintiff not to recognize that the condition might be treatment related." *Id.* "The ultimate issue is the *reasonableness* of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct." *Id.*

[U]ndoubtedly, the *damage* in this case was readily apparent at the time of Mrs. Brooks' death. In *Campo*, 828 So.2d at 511, however, the supreme court instructed that even upon an awareness of damages, prescription "will not run as long as it was *reasonable* for the plaintiff not to recognize that the condition might be treatment related."

*Brooks*, 18-0980, pp. 11-12, 275 So.3d at 48-49. The appellate court reversed the

trial court and concluded:

[Plaintiff] was reasonable in not having recognized the alleged connection between his wife's reporting of symptoms before her death, and [the doctor]'s treatment of those symptoms prior to the release of the autopsy report and the accompanying article detailing the symptoms. While the death certificate listed [the victim's] cause of death, it did not include the listing of symptoms that prompted further correlation with her medical treatment. Accordingly, given the strict construction afforded statutes setting forth prescriptive periods, we conclude that the trial court erred in sustaining the exception of prescription.

*Brooks*, 18-0980, pp. 13-14, 275 So.3d at 50 (citation omitted).

In *Hotard v Banuchi*, 00-1364 (La. App. 5 Cir. 1/30/01), 784 So.2d 654, the

Fifth Circuit conducted a reasonableness inquiry as to the discovery of a medical

malpractice claim for wrongful death, where the district court granted an exception

of prescription. The plaintiffs in *Hotard* filed a medical malpractice claim against

their deceased daughter's pediatrician, alleging the doctor committed malpractice

by failing to diagnose streptococcus and by prematurely releasing their daughter

from the hospital one day after she was born. Plaintiffs asserted that they did not

become aware of the wrongful act until a year after their daughter's death; thus, under the doctrine of *contra non valentem*, their suit was timely filed. On appeal, the appellate court, citing *Rayne State Bank and Trust Co., v. National Union Fire Ins. Co.,* 483 So.2d 987, 995 (La.1986), recognized:

> Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear. In order for the prescriptive period to commence, the plaintiff must be able to state a cause of action—both a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act. (Citations omitted).

As relied on by the *Brooks* Court, the appellate court here further noted, "'prescription does not commence even when an undesirable condition develops some time following medical treatment if it was reasonable for the victim not to have recognized that the condition may have been related to the treatment.'" *Id.*, p. 4, 00-1364, 784 So.2d at 655 (quoting *Dufriend v. Tumminello,* 590 So.2d 1354, 1356 (La. App. 5 Cir.1991)).

After reviewing the evidence, the appellate court reasoned that, during her deposition, the mother testified she knew there was something was not right with her daughter. She called the doctor's office the day after her daughter was released from the hospital and was given an appointment a few days later. She called the doctor's office again two days later—her daughter died the next day, before her scheduled appointment. The *Hotard* Court found plaintiffs' late discovery argument was unreasonable and concluded "the record clearly show[ed] that the plaintiffs were aware of all the facts which form[ed] the basis of their malpractice claim within one year after [their daughter's] release from the hospital and within one year from her death." *Id.*, p. 6, 00-1364, 784 So.2d at 656.

*In re Guidry*, 17-0105, (La. App. 5 Cir. 8/30/17), 225 So.3d 1169, also involved a medical malpractice case wherein the plaintiffs asserted wrongful death and survival action claims. In *In re Guidry*, the defendants filed an exception of prescription as to the wrongful death and survival claims. Plaintiffs invoked the doctrine of *contra non valentum*, arguing the exception applied to suspend prescription because the wrongful death claim was not readily apparent. The trial court denied the exception as to the survival action but granted the exception as to the wrongful death claim. The plaintiffs filed an appeal. On appeal, the Fifth Circuit, in affirming the trial court's judgment, examined the reasonableness in the plaintiffs' delay in discovering the alleged malpractice. The reviewing court accepted plaintiffs' *contra non valentum* argument as to their survival action, but rejected that same argument as to plaintiffs' wrongful death action. In doing so, the majority explained "[t]he evidence in this case indicate[d] that the plaintiffs knew the date Mr. Guidry died [that wrongful death was apparent] and that they immediately requested that an autopsy be perform on Mr. Guidry." *Id.*, 17-0105, p. 8, 225 So.3d at 1175.

In a dissenting opinion, Judge Liljeberg disagreed with the majority's decision to affirm the district court's judgment. Judge Lijeberg explained that the application of *contra non valentum* in both wrongful death and survival actions involves "[t]he same evidence, facts and circumstances" because those claims are "interrelated to the extent they both arise from the same negligence or fault, which is the medical malpractice." *Id.*, 17-0105, p. 10, 225 So.3d at 1181. Judge Liljeberg further reasoned "it is contradictory to have two different factual findings as to when sufficient knowledge existed to commence the prescriptive period for each cause of action." *Id.*

In the case *sub judice*, on the face of the Bush Family's second medical malpractice complaint, the wrongful death and survival actions had prescribed, and the burden of proof shifted to the Bush Family to show their action had not prescribed. At the hearing on the exception for prescription, the Bush Family, in support of their argument that under the doctrine *contra non valentem* prescription was suspended, offered into evidence the affidavit of Ms. Bush.[11] As briefly discussed *supra*, Ms. Bush attested, in pertinent part, that she was notified on November 18, 2017, by Mr. Bush's mother, that Mr. Bush attempted suicide the night before; that after Mr. Bush's death on November 30, 2018, she began obtaining and reviewing Mr. Bush's medical records, but there was nothing in the records to indicate any acts of medical malpractice; and October, 2018—after learning that hospital had certain policies and procedures requiring that a patient be admitted if he threatened suicide—was the first time she had facts which led her to believe Mr. Bush's death resulted from malpractice. The second complaint was filed within the one year of the alleged discovery of the malpractice. Unlike *Hotard* and *In re Guidry*, where the fact-intensive reasonableness inquiry showed the plaintiffs' delay in discovering the alleged malpractice was unreasonable, in this case Defendants failed to rebut Ms. Bush's attestation as to the date of discovery of the alleged malpractice. Similar to *Brooks*, we conclude that the record before this court supports that it was reasonable for the Bush Family to not recognize that Defendants possibly committed malpractice until they discovered, by receiving the complete medical records, including the hospital's policy and

___

[11] It should be noted that the record is devoid of any evidence that discovery has commenced on this issue. Aside from Ms. Bush's affidavit, the only evidence introduced at the exception of prescription hearing were the correspondences between Ms. Bush, the Bush Family counsel and the PCF.

procedures, that Defendants did not follow their own policies and procedures. Thus, the district court's finding, that the alleged delay was reasonable as to the survival action but "the reasonableness of delaying inquiry as to the [wrongful death] was not proven to the Court's satisfaction," is not supported by the record. Moreover, we agree with Judge Liljeberg's conclusion that "it is contradictory to have two different factual findings as to when sufficient knowledge existed to commence the prescriptive period for each cause of action." *In re Guidry*, 17-0105, p. 10, 225 So.3d at 1181. Accordingly, we reverse the district court's judgment, sustaining SBPHF and Dr. Aguilera's exception of prescription on the medical malpractice claim for wrongful death.

Thus, this claim has merit.

**Answer to the Appeal**

Turning to SBPHF's assignment of error in its answer, SBPHF argued the district court erred in denying its exception of prescription as to the Bush Family's survival action claim because no evidence was presented to support the finding.[12]

As discussed *supra*, there are three prescriptive periods for a medical malpractice claim involving a survival action set forth in La. R.S. 9:5628(A): (1) "one year from the date of the alleged act, omission, or neglect"; (2) "within one year from the date of discovery of the alleged act, omission, or neglect"; and (3) "claims filed within one year from the date of such discovery, in all events such

---

[12] Louisiana Civil Code Article 2315.1 provides in pertinent part:

A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:

(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.

21

claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect." The unrebutted evidence presented by the Bush Family at the hearing on the exceptions reflected that the second complaint was filed within one year of the discovery of the alleged malpractice and within the three year period from Mr. Bush's passing. As a result, we find no error in the district court's judgment, denying Defendants' exception of prescription as to the survival action.

This claim lacks merit.

## CONCLUSION

Based on the foregoing, we reverse the district court's judgment, in part, affirm it, in part, and remand the matter for further proceedings consistent with this opinion.

**REVERSED, IN PART,
AFFIRMED, IN PART,
REMANDED**